**Coleen R. ROBERTS, Plaintiff–Appellee,**

v.

**COLLEGE OF THE DESERT, C.A. Patterson, and Fern Stout, Defendants–Appellants.**

**Nos. 85–6335, 85–6356 and 85–6366.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1987.

Decided Nov. 22, 1988.

As Amended March 15, 1989.

1412

Stuart W. Rudnick, Dana D. Howells, Musik, Peeler & Garrett, Los Angeles, Cal., for defendant-appellant-cross-appellee C.A. Patterson.

Sergo Luis Lopez, San Diego, Cal., for plaintiff-appellee-cross-appellant.

Spencer E. Covert, Parker and Covert, Santa Ana, Cal., for defendant-appellant-cross-appellee Fern Stout.

Christopher Lockwood, Mac Lachlan, Burford & Arias, San Bernardino, Cal., for defendant-appellant-cross-appellee College of the Desert.

Before TANG, SCHROEDER and BEEZER, Circuit Judges.

TANG, Circuit Judge:

The College of the Desert and two of its officials, the president and the dean of instruction, appeal the judgment for Coleen Roberts following a jury trial on her sex discrimination and due process claims in her section 1983 action. They also appeal the district court's order reinstating the original judgment following their refusal to pay Roberts the reduced damages she had agreed to accept by way of remittitur. Roberts cross-appeals the judgment for the defendants following a bench trial of her Title VII claims. We affirm in part and remand for further proceedings.

## BACKGROUND

The College of the Desert is a California community college. Dr. Stout was its President and Dr. Patterson was its Dean of Instruction during the time relevant to Roberts' complaint. The College hired Roberts as an instructor and chairperson of the Home Economics Department on July 1, 1974. The College contends that Roberts created serious problems in her administrative capacity because of her failure to adhere to hiring, purchasing and accounting procedures. Officials discussed these problems with Roberts during the 1974–75 academic year and outlined the complaints in a written memo on March 18, 1975. Because the problems continued in the 1975–76 academic year, the Board of Trustees placed Roberts on probationary status for the 1976–77 year and froze her compensation for performing as chairperson at the prior year's level.

During the 1976–77 year, Roberts continued to create administrative difficulties, allegedly by not following hiring and purchasing procedures, by taking unauthorized vacations and by deviating from procedures for obtaining travel reimbursements. In February of 1977, the administration informed Roberts she would not be reappointed as chairperson. Roberts requested a hearing, which was scheduled in June of 1977. During the months prior to the hearing, Roberts further provoked the ire of the administration, allegedly by falsifying her supervisor's signature on a work

requisition, using campus duplicating facilities for personal projects, and teaching at another community college without proper authorization. Roberts contends all the criticisms and standards used in evaluating her were the product of sex discrimination.

At the Board meeting in June, Roberts was given only eight minutes to make her presentation, which was brought to an end by a heated exchange with John McFadden, President of the Board, over the propriety of Roberts' teaching at another college while employed by the College of the Desert. After the meeting, the Board decided to let stand the appointment of a new chairperson to the Home Economics Department.

Roberts remained at the College as a tenured instructor but four restrictions were imposed upon her during the 1977–78 academic year. She was restricted from (1) teaching overload classes, (2) participating in committee work, (3) attending conferences, and (4) holding herself out as an agent of the College. The restrictions were lifted by the end of the year except that Roberts was still not permitted to hold herself out as an agent of the College.

Roberts continued to have conflicts with the College over office assignments, use of personal leave time, and teaching schedules. Roberts contends all of her problems were the product of sex discrimination or were in retaliation for her protest of the loss of the position as chairperson.

Roberts filed suit on July 5, 1983, alleging sex discrimination claims under Title VII, 42 U.S.C. § 2000e et seq., and under the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981, 1983 and 1985(3). Roberts' section 1983 claim was grounded on two theories: denial of equal protection on the basis of sex discrimination and the denial of due process due to the lack of a meaningful hearing. Before trial, Roberts dropped her section 1981 claim, and the court dismissed the section 1985 claim toward the end of the trial. After the trial, the jury found for Roberts on her section 1983 claim and awarded her compensatory damages of $515,000 and punitive damages from Stout of $125,000 and from Patterson

of $15,000. The College and individual defendants moved for judgment NOV or for a new trial. The court agreed there was no basis for punitive damages and that the compensatory damages were excessive. The court ordered Roberts to accept a remittitur or to face a new trial. Roberts agreed to accept the remittitur and the court ordered the defendants to pay $315,-000 within 30 days or it would reinstate the judgment of May 29, 1985 totaling $655,000 damages. All parties timely appealed and cross-appealed.

## ANALYSIS

### I. Statute of Limitations

■ Roberts filed suit on July 5, 1983, alleging discrimination during all the years of her employment by the College from 1974 until the time of filing. Most of the specific acts alleged occurred in 1977 or earlier years. Defendants Patterson and Stout argue on appeal that the three-year statute of limitations, applicable to section 1983 claims filed in California in 1983, bars recovery for damages arising from any conduct prior to July 5, 1980. This argument is without merit because the statute of limitations is an affirmative defense which was not specially pleaded in the district court and cannot be raised for the first time on appeal. *See* Fed.R.Civ.P. 8(c); *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir.1984). Dr. Patterson further argues that he raised this issue in post trial motions, but he only raised the argument that *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), should apply retroactively and that under its rule Roberts' claims should be barred by California's one-year statute of limitations for personal injury actions. This does not constitute pleading of the affirmative defense of the three-year statute of limitations, which was never raised in the district court.

### II. Eleventh Amendment Immunity

■ If the College is an arm of the state for purposes of the eleventh amendment, the district court lacked jurisdiction to entertain the section 1983 suit against the

College. *Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974). Even if the College is shielded from suit by the state's sovereign immunity, we have jurisdiction to consider the merits of Roberts' appeal because she could still recover from the individual defendants in their individual capacity. *Stones v. Los Angeles Community College District*, 796 F.2d 270, 272 (9th Cir.1986). Because we conclude that the jury's verdict should be upheld, we must confront the question of the College's immunity. *Cf. id.* (the fact that claims lacked merit meant panel did not have to try to answer the "quite difficult-question whether judgment against the [college] would violate the Eleventh Amendment").

In analyzing the factors that determine whether a governmental entity is an arm of the state, we consider state law treatment of the entity. *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir.1982). The central factor in this inquiry is "whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury." *Id.* at 1350 (quoting *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir.1981)). We decline to decide this question, believing that it is one for the district court to determine in the first instance, coincident with the development of an appropriate factual record. *See Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 256 n. 19, 73 L.Ed.2d 172 (1982) (avoiding, on prudential grounds, the decision whether Board of Regents is arm of state for eleventh amendment purposes); *accord Keller v. Prince George's County*, 827 F.2d 952, 963–64 (4th Cir.1987).

III. Legal Questions

We review all legal questions de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

A. *Parallel Title VII and § 1983 Claims*

The appellants argue that Title VII is the exclusive remedy for sex discrimina-tion in employment, and therefore, that the district court erred by submitting to the jury Roberts' section 1983 claim based on a denial of equal protection. The Supreme Court has stated generally that Title VII does not deprive aggrieved parties of other remedies. *Johnson v. Railway Express Agency*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). However, in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979), the Court held that section 1985(3) may not be invoked to redress violations of Title VII because section 1985(3) confers no substantive rights. Thus it cannot be invoked when the only right violated is the Title VII right to be free of discrimination in employment. Since *Novotny*, courts have attempted to determine whether its rule applies to actions under section 1983 as well.

The Ninth Circuit has not expressly decided this question but has implicitly recognized that Title VII and section 1983 are not mutually exclusive. *See, e.g., Lowe v. City of Monrovia*, 775 F.2d 998, 1010–11 (9th Cir.1985), *as amended*, 784 F.2d 1407 (9th Cir.1986) (Title VII and section 1983 claims of sex and race discrimination both considered without ruling on exclusivity of Title VII remedies); *Padway v. Palches*, 665 F.2d 965, 968–69 (9th Cir.1982) (Section 1983 claim of denials of due process and equal protection cognizable in case alleging Title VII violations as well).

We agree with the reasoning of those courts that have held that Title VII does not preempt an action under section 1983 for a violation of the fourteenth amendment. *See Keller*, 827 F.2d at 956–63; *Ratliff v. City of Milwaukee*, 795 F.2d 612, 623–24 (7th Cir.1986) (the Fourteenth Amendment and Title VII both grant public sector employees independent rights to be free of employment discrimination; a plaintiff may use section 1983 to escape the comprehensive scheme of Title VII even if the same facts suggest a violation of Title VII); *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 301 (7th Cir.1985); *Grano v. Department of Development*, 637 F.2d 1073, 1075 (6th Cir.1980) (employ-

ee may sue under both Title VII and section 1983 when the section 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution). Both the Fourth and Seventh Circuits distinguish *Novotny* on the ground that the employer in that case was a private entity, so there was no state action element giving rise to a separate constitutional claim cognizable under section 1985(3).

### B. *Due Process*

■ The College and individual appellants argue that Roberts lacked any protectible property interest in continued employment as department chair after only three years in the position on annually renewable contracts. The district court rejected the College's argument that Roberts had no right to due process and held that because the College agreed to give her a hearing the jury could determine that the unreasonable manner of conducting the hearing constituted a deprivation of due process.

Roberts argues that her protectible property interest in her continued employment as a department chair arises from "mutually explicit understandings." *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). The understandings are evidenced by Dr. Stout's statements at the trial. He testified that he could not recommend non-reassignment without good cause and that the Roberts hearing in June 1977 was "part of her appeal rights." Roberts says these comments evidence an understanding of her right to continue in the position for which she was originally hired of sufficient magnitude to meet the *Perry* test. We agree.

The appellants argue that Roberts had no property interest in continued employment because the law of California does not create such an expectation of continuation in an administrative position. *See Lagos v. Modesto City Schools Dist.*, 843 F.2d 347, 349–50 (9th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 309, 102 L.Ed.2d 328; *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1314–17 (9th Cir.1984). While the appellants are correct

in their analysis of state law, they do not address the argument that Dr. Stout's statements reflect a mutual understanding of the nature of Roberts' expectations. The appellants cite out of circuit authority for the proposition that a gratuitous hearing granted as a courtesy and not a right does not have to conform to requirements of due process. *E.g. Kilcoyne v. Morgan*, 664 F.2d 940, 942 (4th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed. 2d 444 (1982); *Clark v. Whiting*, 607 F.2d 634, 642 (4th Cir.1979); *Jeffries v. Turkey Run Consolidated School Dist.*, 492 F.2d 1, 3 (7th Cir.1974). These cases are inapposite where, as here, the right to due process derives from an explicit understanding, as permitted by *Perry*, 408 U.S. at 601, 92 S.Ct. at 2699.

*Brady v. Gebbie*, 859 F.2d 1543 (9th Cir. 1988), is not controlling and may be distinguished because under Oregon law, property rights of state employees must arise solely from statutes or regulations made pursuant to statutory authority. *Papadopoulos v. Oregon State Bd. of Higher Educ.*, 14 Or.App. 130, 511 P.2d 854 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). In the instant case, there is no expression of California law which excludes "tenure by contract" and prohibits a *Perry v. Sindermann claim.*

### C. *Retaliation*

The appellants argue on the authority of *Novotny*, 442 U.S. at 375–76, 99 S.Ct. at 2350–51; that the district court erred in submitting a retaliation claim cognizable only under Title VII to the jury, thus tainting the section 1983 verdict. The court did not give an instruction on retaliation as an element of Roberts' claim, and thus the issue did not go to the jury. To the extent that the appellants are objecting to the admission of evidence or argument on the retaliation question, they have failed to preserve this issue for review because they made no objections during the trial.

### D. *Qualified Immunity*

Immunity exists to shield government officials when their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). Whether the law is well-established is a question of law reviewed de novo. *Ward v. County of San Diego,* 791 F.2d 1329, 1332–33 (9th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). Dr. Stout and Dr. Patterson argue that they are entitled to qualified immunity on the due process theory because under California law there is no property interest in a college administrative position that requires a hearing before nonreassignment. However, the right to notice and hearing has long been established in cases where the plaintiff has a legitimate expectation of continued employment. *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699. Because we have found that the understanding between Roberts and Dr. Stout satisfies the *Perry* standard, the defendants are not entitled to immunity from liability for the College's failure to provide Roberts the rudiments of due process.

## IV. Substantial Evidence

### A. *Liability Verdict*

■ The standard of review for a jury verdict in a civil case is whether it is supported by substantial evidence, that is, such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1013–14 (9th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

The district court indicated that it found substantial evidence to support a finding of a section 1983 violation based on either the equal protection or due process claim, and therefore held that it had to sustain the verdict. We are satisfied that substantial evidence supports the jury's verdict. Even if the evidence of intentional sex discrimination were less than substantial, we have the discretion to attribute the general verdict to the due process violation, of which there was substantial evidence. *Traver v. Meshriy,* 627 F.2d 934, 938 (9th Cir.1980). *Accord McGrath v. Zenith Radio Corp.,*

651 F.2d 458, 464 (7th Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981).

### B. *Damages Reduction*

This court does not disturb a damages award unless it is clearly unsupported by the evidence. *Chalmers v. City of Los Angeles,* 762 F.2d 753, 760 (9th Cir.1985).

The jury awarded Roberts the following compensatory damages:

| | |
|---|---|
| $115,000 | Lost income, expenses and special damages |
| 200,000 | Pain and suffering |
| 200,000 | Destruction of career |

The jury also awarded punitive damages of $15,000 against Dr. Patterson and $125,000 against Dr. Stout.

The district court reviewed the evidence and disallowed the $200,000 attributable to destruction of her career because there was no evidence that Roberts tried to obtain other employment or that her personnel record at the College was causally connected to any putative inability to find another job. Roberts asserts that her career is destroyed and she is unemployable, but she cites to no specific evidence presented at trial to prove that fact.

The district court disallowed the punitive damages against Patterson and Stout because it found no evidence of the requisite intent or reckless and callous disregard. *Smith v. Wade,* 461 U.S. 30, 51, 103 S.Ct. 1625, 1637–38, 75 L.Ed.2d 632 (1983). Roberts has made no argument on appeal in support of the propriety of the punitive damages jury award.

## V. Damages Judgment

■ The district court was within its discretion in granting the defendants' motion for a new trial unless Roberts accepted a remittitur. *Fenner v. Dependable Trucking Co.,* 716 F.2d 598, 603 (9th Cir.1983). But it erred in reinstating the judgment of $655,000 after finding the verdict excessive and insufficiently supported by the record. *Id.* ("The trial court abused its discretion in entering a judgment reflecting damages it had determined were excessive."). Upon

remand the district court is directed to reinstate the reduced damages judgment.

## VI. Appellants' New Trial Motion

In addition to the other asserted grounds for a new trial the appellants contend they were denied a fair trial because of (1) the trial court's exclusion of evidence and (2) Roberts' misconduct. The court's evidentiary rulings are reviewed for abuse of discretion and will not be reversed absent prejudice. *Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986). There was no abuse of discretion in refusing to allow testimony by one of Roberts' prior employers because it was of questionable relevance. Denial of a new trial is reviewed for abuse of discretion. *Robins v. Harum*, 773 F.2d 1004, 1006 (9th Cir.1985). The judge saw Roberts' demeanor and did not find it so egregious as to justify a new trial. We conclude that he did not err in that determination.

## VII. Title VII Cross Appeal

### A. *Do Jury Findings Bind the Trial Court?*

■ The crucial question raised by Roberts' cross appeal is whether the district court was bound by the jury verdict on the section 1983 claim to rule in Roberts' favor on her Title VII claim. We do not decide whether a court must accept jury findings on a legal claim when it rules on an equitable claim because here there were no findings. This was a general verdict and it is impossible to say upon which theory, due process or equal protection, the jury imposed liability. *See Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 355 (7th Cir.1987) (in deciding whether to grant equitable relief under Title VII, the district court would have been prohibited from reconsidering any issues necessarily and *actually* decided by the jury); *Blake v. Hall*, 668 F.2d 52, 54 (1st Cir.1981) (trial judge not bound by the jury verdict in deciding whether to grant equitable relief because there was no way to determine what common issues were decided by the jury), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).

### B. *Substantial Evidence*

■ In reviewing a court's ultimate determination on a Title VII claim, this court applies the clearly erroneous standard because the determination is essentially a factual one. *Atonio v. Wards Cove Packing Co.*, 827 F.2d 439, 443 (9th Cir.1987) (panel opinion after remand from en banc decision), *cert. granted*, —— U.S. ——, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988).

The district court determined that Roberts had made out a prima facie case of sex discrimination, but that the College's reasons for non-reassignment to the chairpersonship were legitimate business reasons which Roberts did not show to be pretextual. This finding is not clearly erroneous.

## VIII. Attorneys' Fees

■ Roberts contends that the district court abused its discretion in denying her attorneys' fees because she prevailed on her section 1983 claim and a prevailing party in a civil rights case is ordinarily entitled to fees under 42 U.S.C. § 1988. The College argues that this court has no jurisdiction to review the attorneys' fees order because Roberts failed to refer to that order in her notice of cross-appeal. The College is correct. Although we have observed that it "violates the spirit of the Federal Rules of Civil Procedure to avoid a decision on the merits on the basis of mere technicalities," *McCarthy v. Mayo*, 827 F.2d 1310, 1314 (9th Cir.1987), Roberts' oversight was more than a mere technicality. Her notice of cross-appeal was specifically limited to an appeal from the portion of the court's May 29, 1985 order entering judgment for the defendants in her Title VII claim. That order did not mention attorneys' fees at all. The College's notice of appeal referred only to the order filed September 19, 1985, denying the motion for new trial, and that order did not mention the attorneys' fees ruling either. In this case it cannot be fairly inferred that Roberts intended to challenge the attorneys' fees ruling. *Cf. id.; see also, C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1055–56 (5th Cir.) (the ex-

press mention of one part of an order negates the inference of the intent to appeal from the order as a whole), *cert. denied,* 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981); *Elfman Motors, Inc. v. Chrysler Corp.,* 567 F.2d 1252, 1254 (3d Cir.1977) (per curiam) (when an appeal is taken from a part of a specified judgment the court of appeals acquires no jurisdiction to review other judgments or portions thereof not so specified); *see also, Torres v. Oakland Scavenger Co.,* — U.S. —, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988) (failure to file notice of appeal in accordance with specificity requirement of F.R.A.P. 3(c) is a jurisdictional bar).

Roberts argues that there was no prejudice to the appellants because she indicated in her civil appeals docketing statement that part of the relief she sought was $222,901 in attorneys' fees. However, she did not brief the issue in any depth and we believe the appellants would be prejudiced by our consideration of the merits of the trial court's decision that any fees awardable for success on the section 1983 claim were offset by fees awardable to the College for its success on the Title VII claim.

■ On the other hand, because Roberts "succeeded on a significant issue and achieved some of the benefit [she] sought in bringing the suit," *Toussaint v. McCarthy,* 826 F.2d 901, 904 (9th Cir.1987), she is entitled to an award of reasonable attorneys' fees for the instant appeal. 42 U.S.C. § 1988.

## CONCLUSION

The judgment of the district court is AFFIRMED in part, REVERSED in part and the cause is REMANDED for entry of a reduced damages judgment and for further proceedings to determine the College's status for purposes of eleventh amendment immunity.