913 F.2d 573
 KAISER DEVELOPMENT COMPANY, aka Kacor Development Company, a
California corporation; Kaiser Hawaii Kai
Development Co., a Nevada corporation,
Plaintiffs-Appellants,
and
Richard Lyman, Jr.; Matsuo Takabuki; Myron B. Thompson;
William S. Richardson; Henry H. Peters, Jr.,
Plaintiffs/Intervenors,
v.
CITY AND COUNTY OF HONOLULU, a municipal corporation,
Defendant-Appellee.
 Nos. 87-2689, 87-2690.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 16, 1988.
Memorandum Filed March 21, 1990.
Opinion Sept. 4, 1990.
 
 Barbara R. Banke, San Francisco, Cal., for plaintiffs-appellants.
 Gideon Kanner, Burbank, Cal., for plaintiffs/intervenors-appellants.
 H. Bissell Carey, III, Robinson & Cole, Hartford, Conn., for defendant-appellee.
 Warren Price, III, Atty. Gen. of the State of Hawaii, Honolulu, Hawaii, for defendant-appellee.
 John K. Van de Kamp, Atty. Gen. of the State of Cal., Andrea Sheridan Ordin, Chief Asst. Atty. Gen., N. Gregory Taylor, Theodora Berger, Asst. Attys. Gen., Mary Gray Holt, Gail Ruderman Feuer, Deputy Attys. Gen., Los Angeles, Cal., for amicus curiae, John K. Van de Kamp, Atty. Gen. of the State of Cal.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHAMBERS, O'SCANNLAIN, and TROTT, Circuit Judges.
 
 ORDER
 
 1
 The memorandum filed on March 21, 1990, 899 F.2d 18, is amended as follows:
 
 
 2
 As amended, the memorandum is redesignated as a per curiam opinion for publication.
 
 
 3
 The panel has voted to deny the petitions for rehearing. Judges O'Scannlain and Trott have voted to reject the suggestions for rehearing en banc, and Judge Chambers so recommends. The full court has been advised of the en banc suggestions, and no judge of the court has requested a vote on them.
 
 
 4
 The petitions for rehearing are DENIED and the suggestions for rehearing en banc are REJECTED.
 
 PER CURIAM:
 
 5
 We are asked to decide whether the district court erred in granting the City and County of Honolulu's ("Honolulu") motion for a directed verdict against the Trustees of the Estate of Bernice P. Bishop ("Bishop"). The district court ordered a directed verdict after determining that Bishop had failed to produce sufficient evidence to support its inequitable precondemnation activities claim against Honolulu. We affirm.
 
 
 6
 * In 1961, Bishop entered into an agreement (the "development agreement") with Kaiser Development Company ("Kaiser") to develop 6,000 acres of land in Honolulu, a portion of which includes a parcel known as Queen's Beach. Kaiser developed most of the property into a new urban community known as Hawaii Kai. Kaiser expected to build a large resort/hotel complex at Queen's Beach, asserting that it considered this project its "crown jewel" and economic reward for having developed the vast Hawaii Kai community. Kaiser spent over $8 million in building the Hawaii Kai infrastructure to accommodate the anticipated resort/hotel development, but made no attempt to develop Queen's Beach until 1971.
 
 
 7
 The 1960 and 1964 General Plans for the long range development of Honolulu, adopted pursuant to the Honolulu City Charter, designated Queen's Beach as a resort and commercial area. Queen's Beach also was designated as a resort and commercial area in both the 1964 and 1966 Detailed Land Use Maps ("DLUM"), which were adopted for numerous areas of Honolulu to accompany the General Plan.
 
 
 8
 In 1977, a new General Plan became effective which also listed Queen's Beach as a potential resort site. In 1982, however, a revised General Plan modified the population densities and removed the designation of the area as a future resort site. In 1983, the City enacted the East Honolulu Development Plan (the "Development Plan") which changed the previous DLUM resort designation of Queen's Beach to one of preservation and park uses.
 
 
 9
 The history of these plans is somewhat confused because the zoning codes were not updated when each new General Plan was adopted. From 1960 to 1969, Queen's Beach was zoned residential. This zoning remained in effect until 1984, when Queen's Beach was zoned for preservation and park use.
 
 
 10
 In 1971, Kaiser applied to have its Queen's Beach property rezoned from residential to resort in accordance with the 1964 and 1966 DLUMs, but Kaiser later withdrew the request. In February 1983, Kaiser applied for approval of a residential subdivision at Queen's Beach in conformity with the existing residential zoning. The city denied the application after the passage of the Development Plan later that year. The denial was upheld by the zoning board of appeals. Kaiser made no subsequent attempt to apply for development permits, zoning changes, or variances at Queen's Beach under the new preservation and park zoning.[1]
 
 
 11
 Kaiser and Bishop brought this suit against Honolulu under 42 U.S.C. Sec. 1983. Honolulu moved for summary judgment. The district court granted summary judgment in favor of Honolulu on all but one of the claims before the court;[2] Bishop's claim of inequitable precondemnation activities proceeded to trial. At the close of Bishop's evidence in support of its claim, the district court granted a directed verdict in favor of Honolulu.
 
 
 12
 We here consider Bishop's appeal from the directed verdict. A directed verdict is proper where the evidence permits only one reasonable conclusion as to the verdict. Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).
 
 II
 
 13
 This court recognizes that, in some limited circumstances, a city's precondemnation activities can give rise to a takings claim in favor of a property owner. In Richmond Elks Hall Association v. Richmond Redevelopment Agency, 561 F.2d 1327 (9th Cir.1977), for instance, we found that a municipal redevelopment agency's activities effected a compensable taking under the fifth and fourteenth amendments to the United States Constitution. The property had been "rendered unsaleable in the open market; its uses were severely limited by [the] Agency; commercial lenders refused to make loans on the subject property; and [the property owner's] peaceful enjoyment and its right to all rents and profits from the property were substantially impaired." Id. at 1331.
 
 
 14
 Bishop alleges that the district court applied the wrong legal standard in determining whether they had presented sufficient evidence to support their inequitable precondemnation activities claim. The district court found that such a claim requires proof that there is "no economically viable use" for the land. Bishop contends that it need show only that "a public entity acting in furtherance of a public project directly and substantially interfere[d] with property rights and thereby significantly impair[ed] the value of property." Richmond Elks, 561 F.2d at 1330; see also Martino v. Santa Clara Valley Water Dist., 703 F.2d 1141, 1147 (9th Cir.), cert. denied, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983).
 
 
 15
 We disagree. A cause of action for inequitable precondemnation activities merely states a type of regulatory takings claim. Recent Supreme Court cases unequivocally indicate that the government does not take an individual's property unless it has " 'denie[d] [him] economically viable use of his land.' " Nollan v. California Coastal Comm'n, 483 U.S. 825, 834, 107 S.Ct. 3141, 3146, 97 L.Ed.2d 677 (1987) (quoting Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)). "[I]n the absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to potential purchasers does not entitle the owner to compensation under the Fifth Amendment." Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 15, 104 S.Ct. 2187, 2197, 81 L.Ed.2d 1 (1984).
 
 
 16
 Under this standard, it is clear to us that the directed verdict was proper. At trial, Bishop presented two expert witnesses who testified to the value of Queen's Beach under existing zoning. One witness gave extensive testimony regarding the permitted use of a golf course. He stated that a private golf course would be economically viable, albeit not as profitable as a resort development. Another witness testified that it would not be "economic" to purchase the property under the current zoning except "perhaps" for speculation. We agree with the district court that the evidence permitted only one reasonable conclusion as to the verdict.[3] See Peterson, 771 F.2d at 1256.
 
 
 17
 Bishop also argues that the district court abused its discretion in excluding certain evidence at trial. See Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988)) (court of appeals reviews district court's ruling on evidentiary questions for abuse of discretion only). They charge that the district court erred by excluding certain testimony of Deputy Parks Director Ramon Duran and City planner Verne Winquist as well as other evidence, including a chart and exhibits.
 
 
 18
 We disagree. The district court properly excluded this evidence as not relevant to the inequitable precondemnation activities claim. The court properly focused on "what was done with this particular property in connection with the applications ... and not what they [i.e., the city officials] discussed in the back room on a lower level." See Reporter's Transcript at 151 (July 7, 1987).
 
 
 19
 Finally, Bishop questions whether the City's alleged attempt to exact a 37-acre park in 1973-75, its alleged exaction of an 80-acre parcel of land in 1983-84, and its redesignation of Queen's Beach from "resort" to "park and preservation" use, constituted "unconstitutional exactions." See Nollan, 483 U.S. at 838-42, 107 S.Ct. at 3148-51. Bishop failed, however, to specify at trial that it was pursuing a separate claim based on unconstitutional exaction. We therefore have no factual record to assist us in ruling on this claim and hence do not reach this question. See Commissioner v. McCoy, 484 U.S. 3, 108 S.Ct. 217, 218-19, 98 L.Ed.2d 2 (1987); Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 This zoning allows for a variety of uses. For instance, the zoning permits the land to be used for fish hatcheries and ponds, forests, game preserves, private golf courses, botanical gardens, cemeteries, and camps
 
 
 [2]
 This decision has been affirmed in Kaiser Development Co. v. Honolulu, 898 F.2d 112 (9th Cir.1990)
 
 
 [3]
 Because we find that Bishop did not offer any substantial evidence that it had no economically viable use for its property, we need not decide if the City took "official action" here. See Richmond Elks, 561 F.2d at 1331 (acknowledging "official action" requirement for inequitable precondemnation claim and finding such action in that case)