990 F.2d 1258
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arthur Charles LIGGINS, Plaintiff-Appellant,
v.
Officers Carlos RIVAS, Willie Moore, Blair Ulring and
WILLIAM LONG Defendants-Appellees.
 No. 90-15824.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 15, 1993.
Decided March 22, 1993.
 
 1
 Before SCHROEDER and BRUNETTI, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 BACKGROUND
 
 3
 On January 19, 1987, police officers Carlos Rivas, Willie Moore, Blair Ulring, and William Long arrested Arthur Charles Liggins for burglary, auto theft, and assault of a police officer with a deadly weapon. Liggins was convicted on all charges. While incarcerated, Liggins brought a pro se action pursuant to 42 U.S.C. § 1983 charging the police officers with using excessive force when arresting him. Before trial, Liggins moved for appointment of counsel but was denied. Trial was held before Magistrate Judge Moulds beginning March 12, 1990. The jury returned a unanimous verdict in favor of the police officers, finding that the police officers used reasonable force.
 
 
 4
 In addition to the convictions arising from the incident at issue, Liggins had been convicted for forgery in 1980 and burglary in 1983. During trial, defense counsel disclosed that they intended to introduce the convictions into evidence. The magistrate judge addressed the admissibility of Liggins' felony convictions when ruling on in limine motions prior to empaneling the jury. The magistrate judge also discussed how he would voir dire the jury in light of Liggins' previous convictions. The magistrate judge then voir-dired jurors as to their ability to assess Liggins' credibility while taking into consideration his criminal record.
 
 
 5
 Defense counsel introduced the convictions into evidence during the cross-examination of Liggins. Counsel asked Liggins whether he had been convicted for burglary in 1983, and burglary, auto theft, and assault with a deadly weapon in 1987 (convictions resulting from the same incident as the ongoing § 1983 suit). Liggins admitted that he had been convicted of all four crimes.
 
 
 6
 Liggins' convictions were also considered when Liggins and the magistrate judge discussed the jury instructions. Liggins, at that time, agreed to the magistrate judge's proposed instructions without objection.
 
 
 7
 At trial, Liggins testified that, during his arrest, the police officers sprayed mace into his eyes and repeatedly kicked and struck him in the groin, head, and chest while he was lying unarmed on the ground. Rivas testified that Liggins resisted arrest and initiated a fight. During the fight, Rivas lost control of his gun. Allegedly, Liggins then used Rivas' gun to strike Rivas on the face and head. Rivas admitted hitting Liggins but claimed he did so in self-defense. Liggins denied that he had purposefully attacked Rivas or that he used Rivas' gun to strike him.
 
 
 8
 Liggins testified that, after arresting and booking him, the police officers took him to the hospital where he was given stitches for a laceration over his left eye. Rivas testified that after the arrest he sought medical care for a knee abrasion, a thumb contusion, and a head injury.
 
 
 9
 Throughout the trial, Liggins attempted to introduce into evidence his and Rivas' medical records and written interrogatories of their treating physicians. During his direct testimony, Liggins sought to admit his own records and the interrogatories of Dr. Phillipi, his treating physician. Defense counsel objected. The court sustained the objection, citing lack of foundation and irrelevancy. During cross-examination of Rivas and at the close of his case, Liggins sought to introduce Rivas' medical records and physician's deposition, purportedly to impeach Rivas. The court again sustained defense objections on the grounds that the records were hearsay and that Liggins had not laid a sufficient foundation.
 
 
 10
 Liggins also sought to have the magistrate judge question potential jurors about racial or ethnic prejudice during voir dire. The magistrate judge acknowledged the request but declined to so question the panel when conducting voir dire. The judge, however, allowed Liggins to directly question jurors on the subject of racial bias both during voir dire and when discussing challenges for cause.
 
 
 11
 After the adverse jury verdict, Liggins appealed pro se and briefs were submitted. Subsequently, appellant consented for the purpose of supplemental briefing to be represented by students in a clinical program of the University of Idaho College of Law. Appellees responded with a supplemental opposition brief. This disposition considers issues raised by Liggins in the first round of briefing as well as issues raised and argued by the University of Idaho.
 
 
 12
 Liggins appeals several trial court rulings. The issues on appeal are:
 
 
 13
 1. Did the trial court abuse its discretion by ruling that Liggins' medical records were irrelevant?
 
 
 14
 2. Did the trial court abuse its discretion by ruling that Rivas' medical records and the deposition based on written interrogatories of Rivas' physician constituted inadmissible hearsay?
 
 
 15
 3. Did the trial court abuse its discretion by refusing to assist Liggins in laying the foundation to admit the medical records?
 
 
 16
 4. Did the trial court commit prejudicial error during its voir dire of proposed jurors when it failed to question jurors about potential racial or ethnic bias?
 
 
 17
 5. Did the trial court abuse its discretion in denying Mr. Liggins' motion for appointment of counsel?
 
 
 18
 6. Did the trial court abuse its discretion by admitting Liggins' prior felony convictions into evidence for purposes of impeachment and by referring to the convictions during voir dire and in instructing the jury?
 
 DISCUSSION
 
 19
 A. The Evidentiary Rulings.
 
 
 20
 Evidentiary rulings are reviewed for abuse of discretion and will not be reversed absent prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988) (citation omitted). The reviewing court must find prejudice unless it concludes that the result of the lower court was more probably than not untainted by the error. Haddad v. Lockheed Cal. Corp., 720 F.2d 1454, 1459 (9th Cir.1983).
 
 
 21
 Liggins contends that the court erred by ruling that Liggins' medical records were irrelevant. The trial court determined, however, that there was no dispute as to Liggins' injuries. When granting defense counsel's objection, the court specifically noted that the defendants were not contesting whether Liggins was injured. We agree that Liggins' medical records were irrelevant and cumulative and therefore find no abuse of discretion.
 
 
 22
 Liggins also contends that the court improperly excluded Rivas' medical records and written interrogatories of Dr. Peterson (the physician who treated Rivas after the arrest) as hearsay. Liggins sought to introduce the medical records and interrogatories to contradict Rivas' testimony concerning his head injuries, presumably to impeach Rivas.
 
 
 23
 During Liggins' criminal trial, Rivas testified on cross-examination that he told Dr. Peterson that Liggins hit him twice with his revolver. At the civil trial, Rivas testified he "may have" told Dr. Peterson that Liggins hit him. Dr. Peterson's response to a written interrogatory was "[whether Rivas told him] is not charted and therefore I cannot truthfully recollect if officer Rivas stated he was struck by his weapon." Apparently, a similar notation was also missing from Rivas' medical records. The trial court ruled that there was insufficient foundation for the evidence. We agree. First, Rivas' testimony was not necessarily inconsistent with Dr. Peterson's response. Second, the court correctly ruled that there was inadequate foundation. Dr. Peterson was not shown to be unavailable. "Unavailability" requires a showing that the proponent of the evidence has been unable to procure attendance, or other situations listed in Fed.R.Evid. 804. Furthermore, to the extent that contradicting Rivas' testimony that Liggins hit Rivas with Rivas' gun was essential, Dr. Peterson's testimony was cumulative; another defendant, Officer Moore, gave testimony which conflicted with Rivas' assertion at trial.
 
 
 24
 B. Refusal to Assist Liggins.
 
 
 25
 Liggins also argues that the district court abused its discretion by refusing to assist him as a pro se party in laying a foundation to admit the excluded evidence. The University makes a plausible argument to extend the rule holding pro se complaints to a less stringent standard than formal pleadings, see Hughes v. Rowe, 449 U.S. 5, 9 (1980), to evidentiary matters. On the facts of this case, however, we decline to impose a duty on trial courts to assist pro se plaintiffs in overcoming evidentiary obstacles. Here, the court did assist Liggins by informing him that the records would not be admitted absent a showing of witness unavailability. Liggins was told specifically the reason for lack of foundation. In a pretrial order the court specifically instructed the parties on procedures for obtaining witnesses and Liggins had used those procedures to obtain other witnesses. He made no request for leave to attempt to obtain the witness to establish unavailability. Thus, we conclude that failure to render further assistance to Liggins was not an abuse of discretion.
 
 
 26
 C. Voir Dire.
 
 
 27
 Liggins contends that the court erred by failing to question potential jurors regarding ethnic or racial bias during voir dire. A district court has considerable discretion to accept or reject proposed voir dire questions and, as long as it conducts an adequate voir dire, its rejection of specific questions is not error. United States v. Giese, 597 F.2d 1170, 1182-83 (9th Cir.) cert. denied, 444 U.S. 979 (1979). Moreover, there is no per se rule requiring inquiry as to racial prejudice. Rosales-Lopez v. United States, 451 U.S. 182, 190 (1981) (citing Ristaino v. Ross, 424 U.S. 589, 596 n. 8 (1976)). "Only when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case does the trial court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion." Rosales-Lopez, 451 U.S. at 190. Here, Liggins made no special showing that there was a particularized risk of bias. Furthermore, the court allowed Liggins to directly address the jury through limited voir dire. Liggins himself specifically asked potential jurors questions addressing possible racial or ethnic bias. Under these circumstances, the court did not abuse its discretion in failing to directly question potential jurors regarding ethnic bias.
 
 
 28
 D. Appointment of Counsel.
 
 
 29
 Liggins next argues that the court abused its discretion in failing to appoint counsel for Liggins at trial. In a civil action for damages, the court appoints counsel only under "exceptional circumstances." See, e.g., Wilborn v. Escalderon, 789 F.2d 1328 (9th Cir.1986). The test for exceptional circumstances requires "an evaluation of both 'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' " Id. at 1331 (citations omitted).
 
 
 30
 In his order denying Liggins' request for counsel, Magistrate Judge Moulds stated:
 
 
 31
 the court does not find the exceptional circumstances justifying the appointment of counsel. Even if it is assumed that plaintiff is not well versed in the law and that he has made serious allegations which, if proved, could entitle him to relief, his case is not exceptional. This court is faced with similar cases almost daily. Without a reasonable method of compensating counsel, this court can appoint counsel only in the most serious and exceptional cases. Therefore, plaintiff's request for the appointment of counsel must be denied.
 
 
 32
 Appellees point out that at close of the trial the court stated to Liggins:
 
 
 33
 Mr. Liggins, you represented your side well. I understand you are spending some time at the institution working on some advanced education. I commend you in those efforts. I wish you luck in that regard.
 
 
 34
 Appellees' Brief II, at 11 (quoting TR 154, at 77). Appellees also point out that Liggins conducted substantial discovery, obtained an FBI report and depositions on written interrogatories, and produced transcripts of his preliminary hearing and trial. We follow Wilborn v. Escalderon, 789 F.2d 1328 (9th Cir.1986) and agree with the magistrate judge. These circumstances are not "exceptional."
 
 
 35
 E. Admission of Prior Felony Convictions.
 
 
 36
 Finally, Liggins argues that the trial court abused its discretion by admitting Liggins' prior felony convictions into evidence and by referring to the convictions during voir dire and in instructing the jury.
 
 
 37
 The trial court admitted the convictions, relying on Green v. Bock Laundry Mach. Co., 490 U.S. 504 (1989). Bock Laundry held that "[Fed.R.Evid.] 609(a)(1) requires a judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of ensuant unfair prejudice to the witness or the party offering the testimony." Id. at 527. Rule 609(a)(1), however, was amended in January 1990 (before trial in this case) but did not become effective until December 1990 (while appeal was pending). The amended rule requires a court to subject prior felony convictions to the balancing test of Fed.R.Evid. 403. Liggins argues that we should apply the 1990 amendment to Rule 609(a)(1) retroactively and remand the case for Rule 403 balancing.
 
 
 38
 There are two lines of authority concerning retroactive application of statutes. Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 836-37 (1990). In Kaiser, the Supreme Court recognized the apparent tension between Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988) and Bradley v. Richmond School Bd., 416 U.S. 696 (1974) but noted "[w]e need not in this case, however, reconcile the two lines of precedent ... because under either view, where the congressional intent is clear, it governs." Kaiser, 494 U.S. at 837. The Court also noted that " '[r]etroactivity is not favored in the law.... [C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.' " Id. (citing Georgetown, 488 U.S. at 208). In the case of Rule 609(a)(1), congressional intent is not ambiguous. The plain language of the Rule is clear on its face. The rule was promulgated on Jan. 26, 1990 to become effective on December 1, 1990. Congress could have chosen to apply the rule before December 1, 1990 but did not. Therefore, the magistrate judge was correct in relying on Bock Laundry.
 
 CONCLUSION
 
 39
 For the reasons stated, judgment in favor of defendants is AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior U.S. District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3