783 F.2d 1337
 22 Fed. R. Evid. Serv. 241, Prod.Liab.Rep.(CCH)P 10,931
Cleo KISOR, as Personal Representative of the Estate of
Leonard F. Kisor, Deceased, Plaintiff-Appellant,
v.
JOHNS-MANVILLE CORP., et al., Defendants,
Owens-Illinois, Inc., Defendant-Appellee.
 No. 84-4380.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1985.
Decided Feb. 27, 1986.
 
 Raymond J. Conboy, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for plaintiff-appellant.
 Michele C. Coyle, Gibson, Dunn & Crutcher, Seattle, Wash., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT and REINHARDT, Circuit Judges, and STRAND,* District Judge.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 In this appeal we must decide whether a manufacturer's ignorance of an asbestos product's danger is a defense to a wrongful death claim based solely upon a strict liability theory under Washington law. We hold that it is not.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 In 1980, Leonard Kisor, an asbestos worker for 34 years, died of mesothelioma, an abdominal cancer that results from the inhalation of asbestos fibers.[1] His widow sued numerous asbestos manufacturers for wrongful death, alleging negligence and strict product liability for failure to give adequate warning of the product's danger. All defendants, except Owens-Illinois and Johns-Manville, had settled by the end of trial. Johns-Manville sought the protection of Chapter 11 of the Bankruptcy Act and did not participate in the trial.
 
 
 3
 At the close of her case in chief, Kisor abandoned her negligence claim and proceeded solely on a strict products liability claim. She then asked the judge to limit the anticipated testimony of the defense expert witnesses.[2] She argued that any testimony concerning medical knowledge and industry standards in the 1940's and 1950's would be irrelevant to her remaining strict liability claim and inadmissible.
 
 
 4
 The judge let Owens-Illinois present its experts. Dr. Demopoulos testified at length concerning industry standards for workplace exposure to asbestos dust during the decade Owens-Illinois produced Kaylo.[3] He testified also that it was unknown until the early 1960's that exposure to asbestos could lead to mesothelioma.
 
 
 5
 According to Demopoulos, the safe level recommended by government industrial hygienists as well as independent scientists was an asbestos density in the work environment below five million particles per cubic foot. He also testified that Owens-Illinois kept well within this Threshold Limit Value, or TLV, at its own plants and advised users of Kaylo to do so and to control excess asbestos dust. Kaylo contained no other warnings. Two other witnesses, former employees of Owens-Illinois, gave testimony consistent with that of Demopoulos as to Owens-Illinois's conformity with industry custom and its ignorance of the long-term harm associated with low-level asbestos exposure.
 
 
 6
 Before closing argument, the district judge instructed the jury on Washington law governing products liability claims.[4] Kisor did not object. She did except, however, to the court's refusal to give three of her requested instructions. She contends that the court's failure to give Plaintiff's Instruction No. 10 was error because it would have explicitly negated the manufacturer's ignorance as a defense.[5]
 
 
 7
 Owens-Illinois's counsel emphasized in closing argument that its ignorance of the harm resulting from workers' exposure to low levels of asbestos was relevant and was a defense to Kisor's strict liability claim. He argued also that Kisor had failed to show that its product was either a substantial factor in causing or a proximate cause of Kisor's death.[6] The jury returned a general verdict in favor of the defendant on which judgment was entered. Kisor timely appealed.
 
 ISSUES ON APPEAL
 Kisor raises two issues:
 
 8
 (1) Did the district court err in admitting testimony as to medical and industry knowledge concerning the hazards of asbestos exposure at the time Kisor was exposed?
 
 
 9
 (2) Did it err in refusing Kisor's requested instruction that ignorance of the harm of asbestos exposure is not a defense to a strict liability claim?
 
 STANDARD OF REVIEW
 
 10
 Evidentiary rulings are reviewed for abuse of discretion and will not be reversed absent some prejudice. Coursen v. A.H. Robins Co., Inc., 764 F.2d 1329, 1333 (9th Cir.1985). To reverse, we must say that more probably than not, the error tainted the verdict. Haddad v. Lockheed California Corp., 720 F.2d 1454, 1459 (9th Cir.1983).
 
 
 11
 In reviewing jury instructions we must determine whether, viewing the instructions as a whole, the court gave adequate instructions on each element of the case to ensure that the jury fully understood the issues. Fiorito Bros., Inc. v. Fruehauf Corp., 747 F.2d 1309, 1315-16 (9th Cir.1984). We must consider whether the instruction is misleading or states the law incorrectly to the prejudice of the objecting party. Coursen, 764 F.2d 1329, 1337 (9th Cir.1985).
 
 
 12
 We review the district court's determination and application of state law de novo. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 DISCUSSION
 Evidence of Manufacturer's Knowledge
 
 13
 In this diversity suit, the substance of Washington law applies. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We must decide as we think the state's highest court would. To decide if it was an abuse of discretion to admit evidence of Owens-Illinois's knowledge at the time of Kisor's exposure, we must determine whether Washington law allows the "manufacturer's knowledge" defense offered at trial.[7]
 
 
 14
 In Washington, in determining the adequacy of a warning in a strict liability action, the question is: "Was the warning sufficient to catch the attention of persons who could be expected to use the product; to apprise them of its dangers and to advise them of the measures to take to avoid those dangers?" Little v. PPG Industries, Inc., 92 Wash.2d 118, 122, 594 P.2d 911, 914 (1979).[8] The focus is on the warning itself and the reasonable expectations of the consumer, not upon the manufacturer's conduct. Id.
 
 
 15
 In another case we asked the Washington Supreme Court to decide the admissibility of evidence of compliance with industry customs and standards when offered by the defendant as evidence of the reasonable expectation of the ordinary consumer. Its answer:
 
 
 16
 Introducing evidence of industry and/or manufacturer's customs and practices shifts the jury's focus from what the consumer expects to what the manufacturers are doing. By focusing the jury's attention on the custom of the industry, implicitly the jury's attention is focused on the defendant's design choice and the reasonableness of that choice. In effect, such evidence incorporates negligence concepts and the seller oriented approach we rejected in Estate of Ryder v. Kelly-Springfield Tire Co. [91 Wash.2d 111, 587 P.2d 160 (1978) ]. This is not appropriate in actions alleging strict liability under Section 402A.
 
 
 17
 "The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product."
 
 
 18
 * * *
 
 
 19
 The plaintiff takes the design as it was finalized in the finished product and shows it was not reasonably safe because the user would not contemplate the danger in the normal and innocent use of the product or consumption of the product. The liability of the manufacturer is measured solely by the characteristics of the product he has produced rather than his behavior and, therefore, strict liability does not sound in negligence. (citations omitted).
 
 
 20
 Lenhardt v. Ford Motor Co., 102 Wash.2d 208, 212-13, 683 P.2d 1097, 1100 (1984).
 
 
 21
 Owens-Illinois's inquiries about medical knowledge in the industry and industry standards impermissibly put negligence concepts before the jury. These are irrelevant in a strict products liability case under Washington law. Nor should the defense have been allowed to argue in closing that ignorance of the product's danger is a defense to strict products liability. This argument misstated the state law and, coupled with the expert testimony, allowed the jury to conclude that if Owens-Illinois did not know of the danger of its product, it could not be held liable.[9]
 
 
 22
 In this case, we cannot say that the jury's decision was unaffected by the admission of this irrelevant evidence. Because the judge did not strike or admonish the jury to disregard the evidence, the verdict was probably tainted by the evidence of the manufacturer's knowledge. See Sheehy v. Southern Pacific Transportation Co., 631 F.2d 649, 652 (9th Cir.1980).
 
 
 23
 Kisor was prejudiced by the admission of evidence not relevant to her strict liability claim, and we conclude that refusal to exclude such evidence was an abuse of discretion.
 
 Instruction on Manufacturer's Knowledge
 
 24
 Kisor contends that the court's failure to give Plaintiff's Instruction No. 10 let the jury weigh improper evidence and decide the case on an improper standard of liability. She argues that this instruction was necessary to tell the jury that a manufacturer's lack of knowledge of the harmful characteristics of its product is not a defense to a strict liability claim under Washington law.
 
 
 25
 We agree that under Washington law the instruction was necessary. When considered with the erroneously admitted evidence of the manufacturer's knowledge, the instruction given, albeit an accurate statement of the law of strict liability, suggested improperly that recovery under a strict liability theory requires proof of negligence. Washington law is unequivocal:
 
 
 26
 [T]he objective of the rule of strict liability with respect to dangerous products is defeated if the plaintiff is required to prove that the defendant was negligent, or the latter is allowed to defend upon the ground that he was free of negligence. It is the adequacy of the warning which is given, or the necessity of such a warning, which must command the jury's attention, not the defendant's conduct.
 
 
 27
 Little v. PPG Industries, Inc., 92 Wash.2d 118, 121, 594 P.2d 911, 914 (1979).
 
 
 28
 Owens-Illinois's reliance on Gammon v. Clark Equipment Co., 104 Wash.2d 613, 707 P.2d 685 (1985), is misplaced. The Washington court held there that the trial court's failure to give a similar instruction (seller liable despite exercise of reasonable care) was not an abuse of discretion.
 
 
 29
 However, Gammon was tried on theories of both negligence and strict liability. The court found that the instructions given "[did] not interject negligence principles into the strict liability cause of action." Id. at 618, 707 P.2d at 687.
 
 
 30
 Here, only a strict liability theory was given to the jury. The error in admitting evidence of the manufacturer's knowledge and conduct allowed it to conclude that an absence of manufacturer's negligence was relevant and was a defense to the strict liability claim. This was error.
 
 
 31
 We think the Washington Supreme Court, if confronted with this case, would find that Kisor's proposed Instruction No. 10 was necessary to "properly inform the trier of fact of the applicable law." Id. at 617, 707 P.2d at 687. Here, the proposed instruction was necessary to state Washington law correctly and to avoid misleading the jury. The refusal to give the instruction was error.
 
 CONCLUSION
 
 32
 The admission of evidence as to the manufacturer's knowledge was an abuse of discretion. Given the admission of this evidence, the failure to give Kisor's requested instruction (that manufacturer's knowledge is not a defense to a strict liability claim under Washington law) was error.
 
 
 33
 We reverse and remand for a new trial.
 
 
 
 *
 Of the District of Arizona
 
 
 [1]
 The parties do not dispute that, given the long latency period between exposure and the manifestation of asbestos-related ailments, Kisor's exposure to asbestos fibers in the late 1940's and 1950's caused Kisor's cancer, which was diagnosed in 1980
 
 
 [2]
 Owens-Illinois claims that Kisor did not adequately object to the admission of its expert witnesses' testimony. A specific and timely objection is required to preserve evidentiary rulings for review. See Brocklesby v. United States, 767 F.2d 1288, 1293 n. 5 (9th Cir.1985). Kisor objected before the start of the defense case and the judge overruled the objection. In discussing jury instructions, the judge refused to give some of Kisor's proposed instructions and stated: "As I said before, this is not a case of absolute liability. I understand your statement though."
 Kisor renewed her objection when the magistrate presided over the final day of testimony. Finally, she moved for a mistrial based on the improper argument of negligence principles and closing arguments, and renewed her objection to the defense expert witness' testimony. We find that Kisor's objections to the admission of the testimony of Owens-Illinois' expert witnesses were adequate to preserve them for our review.
 Nor did Kisor waive her objections by cross-examining Owens-Illinois's expert witnesses. The judge expressly set the direction of trial proof by overruling her objection, and she did not waive the objection by proceeding in accord with the court's ruling. See United States v. Hogan, 763 F.2d 697, 701 (5th Cir.1985).
 
 
 [3]
 Kaylo was the brand-name for the insulation tubing and block material manufactured and distributed by Owens-Illinois from 1948 to 1958. Asbestos was used in Kaylo as a suspension agent to provide reinforcement and prevent cracking
 
 
 [4]
 The court gave this instruction on strict liability, using language closely patterned after Washington case law:
 On the plaintiff's products liability claim, the plaintiff has the burden of proving each of the following propositions as to each defendant:
 First, that the decedent was a user or consumer of the defendant's product;
 Second, that the product was unreasonably dangerous because of a design defect or failure to warn, which rendered the product dangerous beyond the expectations of the ordinary consumer of the product;
 Third, that the product was expected to and did reach the decedent without substantial change in the condition in which it was sold; and
 Fourth, that the unreasonably dangerous condition of the defendant's product was the proximate cause of the physical harm sustained by the decedent.
 A user or consumer is one who a manufacturer should reasonably expect to use the product for the purpose for which it is intended. It is not necessary for the user or consumer to be the purchaser of the product.
 A product is considered "unreasonably dangerous" if it is unsafe in ways or to the extent beyond that which an ordinary user would reasonably contemplate when using it in a foreseeable manner.
 
 
 [5]
 Instruction No. 10 provided:
 A manufacturer or supplier of a product is under a duty to provide adequate warnings of any inherent danger in the product and to provide adequate directions for its safe usage. A defendant is not relieved of that duty by any showing that it was unaware that its product was inherently dangerous.
 
 
 [6]
 Owens-Illinois introduced evidence that it had captured no more than two percent of the national asbestos market and that most of its sales were concentrated on the East Coast near its manufacturing plants. Kisor disputed Owens-Illinois's market statistics. The parties also disagreed on how frequently Kisor handled Owens-Illinois asbestos products at the five-hundred-odd West Coast job sites where he worked as an insulator. However, Kisor introduced evidence sufficient to put the question of causation before the jury, and Owens-Illinois does not argue that it was entitled to a directed verdict on the causation issue
 
 
 [7]
 Owens-Illinois contends that evidence of a manufacturer's knowledge and compliance with industry standards is relevant to determining reasonable consumer expectations of the safety of a product. We reject this contention. Washington case law is clear: "In that the reasonableness of the defendants' conduct is irrelevant in strict liability cases, industry custom and standards, which form the basis of the defendant's conduct, are equally irrelevant. Strict liability is predicated upon a no-fault concept and evidence that other manufacturers do the same thing as the defendant introduces concepts of fault that are not relevant to the reasonable expectation of the ordinary consumer." Lenhardt v. Ford Motor Co., 102 Wash.2d 208, 213, 683 P.2d 1097, 1100 (1984)
 Owens-Illinois contends that it was entitled to introduce evidence of then current medical knowledge to rebut "state of the art" testimony presented by Kisor in her case-in-chief. This contention is without merit. Kisor effectively "closed the door" on the issue of negligence by abandoning this theory of liability. We cannot say that Kisor put in issue the custom of the industry or the feasibility of alternative design so as to allow Owens-Illinois to meet that evidence. See Lenhardt, 102 Wash.2d 208, 213-14, 683 P.2d 1097, 1100 (1984). Kisor alleged that the asbestos product manufactured by Owens-Illinois was not reasonably safe based upon reasonable consumer expectations, and evidence of industry custom or standards should not have been allowed as a defense. See id. "The manufacturer's exercise of care and conversely its negligence are not matters that the jury need consider." Id. at 215, 683 P.2d at 1101.
 
 
 [8]
 In 1981, the Washington legislature enacted the Tort Reform Act, which to some extent alters the substance of product liability law. See Wash.Rev.Code Secs. 4.22.005 and 7.72.010. The Tort Reform Act applies only to "claims arising on or after July 26, 1981," Wash.Rev.Code Sec. 4.22.920(1), and therefore does not apply to this case. See Sahlie v. Johns-Manville Sales Corp., 99 Wash.2d 550, 554, 663 P.2d 473, 475 (1983)
 
 
 [9]
 Defense counsel said in closing argument:
 Now, there are two instructions on this. Please review those instructions very carefully. Nowhere, nowhere does it say that a manufacturer is absolutely liable, no matter what it knew or could have known about its product at the time its products were manufactured. This is not the law.
 Later, counsel continued to argue this ignorance defense:
 Absolute liability is simply not the law and it's just not possible when in 1958 Owens-Illinois left the insulation business that it could have known the absolute unknowable, that its product was a danger or a hazard to anybody.
 * * *
 There simply is no basis in this case for holding Owens-Illinois liable to the plaintiff .... Owens-Illinois could not have known of any danger at the time it manufactured its product to someone like Mr. Kisor.