928 F.2d 880
 19 Fed.R.Serv.3d 1487, 14 UCC Rep.Serv.2d 79,
33 Fed. R. Evid. Serv. 478
 Alan Koon To PAU, Jin-Si Pau, a minor, by Alan Koon-To Pau,
as guardian ad litem; Jin-Yi Pau, a minor, by
Alan Koon-To Pau, as guardian ad litem;
Estate of Wai-Ching So,
Plaintiffs-Appellants,
v.
YOSEMITE PARK AND CURRY COMPANY, an MCA Company, Defendant-Appellee.
 No. 89-15511.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 17, 1990.
Decided March 22, 1991.
 
 Richard L. Schneider, Brunn & Flynn, Modesto, Cal., for plaintiffs-appellants.
 David H. Brent, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before CHOY and FLETCHER, Circuit Judges, and FITZGERALD, District Judge.*
 CHOY, Circuit Judge:
 
 
 1
 This case involves a fatal bicycle accident in Yosemite National Park. A jury found the Defendant-Appellee Yosemite Park and Curry Company (Curry Company) not liable for the death of Eleanor Wai Ching So. Plaintiffs-Appellants, the children and husband of the decedent (the Paus), argue a new trial is necessary for numerous reasons. On the basis of our consideration of certain of these issues we reverse the judgment of the district court and remand for a new trial.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 The family of decedent Eleanor Wai Ching So came to the United States from Hong Kong for a summer vacation in 1985. While visiting Yosemite National Park, the family was given a brochure showing numerous bike trails, including the Mirror Lake Trail, and advertising Curry Company's bicycles. The brochure recommended Mirror Lake Trail as a paved rode closed off to automobile traffic, and thus a "safe and enjoyable cycling area." The family decided to rent bicycles from Curry Company and ride to Mirror Lake. Curry Company was the sole source of bike rentals in Yosemite, and rented only bicycles with "coaster-style" brakes. "Coaster" brakes work by pushing backwards on the pedals, as contrasted with "hand brakes," which work by squeezing levers mounted on the handle bars. Curry Company provided a helmet only to the youngest child, who rode in a child's seat.
 
 
 3
 After sight seeing at the top of the Mirror Lake Trail, the family started back down. The family thought Eleanor was going to walk her bike down the trail behind the others, who were going to ride. Evidently Eleanor changed her mind and decided to ride. Upon hearing her frightened screams for pedestrians to get out of her way, the family turned to see Eleanor rushing rapidly down the hill with her feet off the pedals. Eleanor then hit a pedestrian from behind and fell to the ground. She hit her head in the fall and lost consciousness.
 
 
 4
 Eleanor was taken to a nearby clinic and then flown by helicopter to a hospital in Modesto. She died in the hospital several days later. Allegedly, she came out of her coma on the second day, but only long enough to indicate that she needed to use the bathroom, and to say that "the brakes failed."
 
 
 5
 Park Ranger Bryant arrived at the accident site shortly after the mishap. Ranger Bryant interviewed Eleanor's husband, Alan, about what he saw. He said that his wife had forgotten about the brakes and panicked. After the ambulance had taken Eleanor away, Bryant tested the bicycle's brakes.
 
 
 6
 At this point there is some confusion about what occurred. Ranger Bryant either returned the bicycle to Curry Company or impounded it pending an investigation. The attorney for Curry Company attempted to explain the mix-up to the district court in a sworn declaration. The attorney stated that Ranger Bryant had taken the accident bicycle to the hospital, where Curry employees examined the bicycle. Then Ranger Bryant logged the bicycle into evidence, and the bicycle was put in an impound garage used to store evidence.
 
 
 7
 Bryant claimed to have taken the bicycle out of evidence storage to test it a second time. Bryant then wrote in his accident report that the bicycle had been released back to Curry Company. He later explained that he assumed that shortly the bicycle would be released back to Curry Company, but that he put it back into evidence storage. The head of law enforcement for Yosemite National Park, Lee Shackelton, stated in deposition testimony that the accident bike was never released back to Curry Company; rather it remained in the evidence storage facility until moved to a storage facility in Fresno at the request of Curry Company's attorney. The bicycle moved to Fresno was red and identified as number 844.
 
 
 8
 The Paus' counsel received Ranger Bryant's accident report and assumed that the accident bicycle had been returned to Curry Company. Consequently, he requested that Curry Company's risk manager, James Edeal, retrieve the bicycle so it could be examined. Edeal also believed that the bike had been returned to the bike stand, so he obtained bicycle number 844 from the shop. This bike was blue, and allegedly performed poorly on a brake test performed by the clerk for the Paus' attorney.
 
 
 9
 When it became clear that there was a mix-up and that two bicycles were numbered 844,[1] a representative for Curry Company wrote to the Paus' counsel and explained that counsel had examined the wrong bike. The Paus' attorney requested that both bikes be produced for examination in Palo Alto. Curry Company only produced the red bicycle. Curry Company subsequently had the blue bike shipped to Fresno to be stored with the red one, and then notified the Paus that both bikes were available for inspection.
 
 
 10
 At some point after the accident but prior to trial, Curry Company implemented a policy of prohibiting renters of its bicycles from riding on the Mirror Lake Trail. In preparation for this litigation, the Paus' attorney went to the Curry Company rental shop and secretly videotaped an employee telling renters that the Mirror Lake Trail was dangerous, that serious accidents involving rental bikes had happened there in the past, and that now Curry Company prohibited the use of its bikes on that trail. In addition, the United States Park Service placed a sign at the foot of Mirror Lake Trail prohibiting rental bikes from using the trail.
 
 Proceedings
 
 11
 The Paus' first amended complaint contained tort claims and claims for breach of warranty based on damages resulting from Eleanor's fatal bicycle accident. The Paus also sued Curry Company for intentional spoliation of evidence in anticipation of litigation.
 
 
 12
 The Paus moved for summary judgment on their spoliation of evidence and express warranty claims. Curry Company made a cross-motion for summary judgment on the spoliation of evidence claim. The Paus also made a motion to strike Curry Company's answer for discovery abuse based on the same allegations on which the spoliation of evidence claim was based.
 
 
 13
 The district court determined that Curry Company's conduct in the accident bike mix-up did not warrant the extreme sanction of striking its answer and entering a default judgment in favor of the Paus. The district court also entered summary judgment against the Paus on their spoliation of evidence claim because it deemed the discovery mix-up unintentional and because both bikes were available for inspection prior to trial.
 
 
 14
 In addition, the district court refused to enter summary judgment against Curry Company on the express warranty claim despite the fact that Curry Company had failed to respond to that portion of the Paus' motion. The district court ruled that the representation that formed the basis of the Paus' express warranty claim concerned the bicycle trail, and thus was not connected with the rental of the bicycle. The court considered this claim mislabeled, and would only allow it to go forward as a negligent or intentional misrepresentation claim.
 
 
 15
 The case proceeded to trial. The parties stipulated that the red bike was the accident bike. The district court made several rulings out of the presence of the jury. It ruled that any evidence of subsequent remedial measures would be excluded under Fed.R.Evid. 407, unless offered for proof of feasibility of changes or to show control, if controverted, or for impeachment purposes. Further, the district court refused to allow the introduction of California's bicycle trail standards.
 
 
 16
 Finally, the district court refused to allow the alleged statement made by Eleanor that "the brakes failed" to be presented to the jury. The court held that it was inadmissible hearsay and that none of the exceptions to the hearsay rule applied.
 
 
 17
 After five days of trial, the jury entered judgment in favor of the defendant. Plaintiffs moved for judgment notwithstanding the verdict (j.n.o.v.), which the court took under submission but subsequently denied. The Paus timely appealed.
 
 DISCUSSION
 I. Judicial Misconduct
 
 18
 The Paus argue that the district judge should have recused himself from this case, sua sponte, because of his bias against the Paus and their counsel. In making this argument the Paus rely on 28 U.S.C. Sec. 455(a) (1988), which requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Paus failed to make a recusal motion to the district court. While such a failure "does not preclude raising on appeal the issue of recusal under Sec. 455," it does increase their burden in demonstrating that the district judge erred in not recusing himself. Noli v. Commissioner, 860 F.2d 1521, 1527 (9th Cir.1988).
 
 
 19
 The Paus cannot sustain that burden here. All of their allegations relate to incidents during the course of the proceedings, and recusal under section 455 is required "only if the bias or prejudice stems from an extrajudicial source and not from conduct or rulings made during the course of the proceeding." Toth v. TransWorld Airlines, 862 F.2d 1381, 1388 (9th Cir.1988).
 
 
 20
 Even if we were to view the Paus' recusal claim as a charge of judicial misconduct, their appeal on this point is meritless. "Litigants are entitled to a judge who is detached, fair, and impartial." Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 531 (9th Cir.1986). The standard for reversal on the basis of judicial misconduct in a civil trial is, nevertheless, quite high. Comments by the judge require reversal if the judge expresses his opinion on an ultimate issue of fact in front of the jury or argues for one of the parties. Id. Reversal will not be required where the judge emphasizes evidence; nor where the judge expresses skepticism, provided that the witness has an opportunity to respond. Id. Cutting comments to counsel, particularly those relating to skill rather than good faith or integrity, will not generally mandate reversal. Id.; Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 780 (9th Cir.1990).
 
 
 21
 The Paus' allegations of judicial misconduct consist of several incidents during the course of the proceedings. At the pretrial conference the judge stated that he had seen better cases before and that the case did not impress him. During the trial, the district court made certain statements in front of the jury that the Paus argue portrayed their counsel as incompetent and deceitful.
 
 
 22
 For example, in response to their counsel's inquiry into why the court was sustaining a defense counsel objection, the judge stated, "Counsel I didn't realize I had to conduct a law school class, but I guess I do." At another point, the judge stopped their counsel from pursuing a line of questioning by saying, "Counsel, we settled in chambers that the Curry Company had absolutely nothing to do with the roads in Yosemite Park, and I instructed you that the Government is not a defendant in this action and that the--their (sic) will be no mention of the maintenance, signage (sic) of roads, and if you didn't understand it then, you better understand it now because the next time you pull such a stunt, you are going straight down the street to the Fresno County jail for contempt of court." Finally, in response to Appellants' motion for j.n.o.v., the district court judge said he would consider it, but that he was not overly impressed with the Paus' case on liability.
 
 
 23
 These are the most egregious acts the district judge committed. There was no prejudicial misconduct even though the acts were regrettable. At times the judge was gruff with the Paus' counsel; but there are also incidents in the record where the judge was equally gruff with Curry Company's counsel. While we do not condone the heavy-handed style of the judge in this case, his conduct does not warrant retrial.
 
 
 24
 II. Alleged Discovery Abuse/Spoliation of Evidence
 
 
 25
 The Paus moved for summary judgment and to strike Curry Company's answer on the basis of spoliation of evidence and alleged discovery abuse. We review the court's refusal to enter a default judgment against defendants for abuse of discretion. First Idaho Corp. v. Davis, 867 F.2d 1241, 1242 (9th Cir.1989). We review for clear error any factual findings the judge made relating to the motion for discovery sanctions. Halaco Eng'g Co. v. Costle, 843 F.2d 376, 379 (9th Cir.1988).
 
 
 26
 The alleged discovery abuse primarily involved the confusion over the identity of the accident bike. The court accepted Curry Company's position that this was an accidental mix-up, and noted that Curry Company had notified the Paus that both bikes were presently available for inspection. These factual findings were not clearly erroneous. The district court was within its discretion in ruling that Curry Company's conduct did not warrant the extreme sanction of entering a default judgment against it. See Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir.1983) (dismissal sanction appropriate only where the failure to comply is due to willfulness, bad faith, or fault of the parties).
 
 
 27
 The district court's decision to enter summary judgment in favor of the Curry Company on the spoliation of evidence claim is reviewed de novo. Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Summary judgment is appropriate where the non-moving party has "failed to make a sufficient showing on an essential element of [their] case...." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 28
 In order to sustain their tort claim for intentional spoliation of evidence under California law the Paus must at least show that Curry Company intentionally destroyed evidence relevant to this law suit and that this action prejudiced the Paus' case. Jablonski v. Royal Globe Insurance Co., 204 Cal.App.3d 379, 393-94, 251 Cal.Rptr. 160, 168-69 (1988). The district court granted Curry Company's summary judgment motion on the spoliation claim because the Paus provided no evidence that Curry Company had intentionally interfered with the Paus' opportunity to win their lawsuit. The fact that both bicycles were currently available for inspection also appears to have been an important factor in the court's decision.
 
 
 29
 The Paus failed to provide evidence of a material dispute concerning the two essential elements of their spoliation claim outlined above. Consequently, the district court was correct in entering summary judgment on this claim.
 
 III. Express Warranty Claim
 
 30
 The district court ruled that the Paus had to change their express warranty claim to one for negligent or intentional misrepresentation. The court's justification for this ruling was that the representations in Curry Company's brochure concerned the trail, and was not connected with the rental of the bicycles.
 
 
 31
 The brochure was titled "Yosemite by Bike" with the subcaption "Rental Information and Trails." It encouraged people to "[s]ee the sights by bicycle. It's great fun and great exercise too!" The brochure contained a map which detailed various bike paths including the Mirror Lake Trail. The brochure also stated that bikes were "available from" certain bike stands operated by Curry Company, and listed the road distances from Curry Company's bike stands to various locations, including Mirror Lake. The brochure described the "equipment" available as "Schwinn standard (one-speed) bicycles." Finally, the "Recommended cycling areas" section of the brochure stated "[T]he 4.4 mile Happy Isles/Mirror Lake loop is closed off to automobiles creating a safe and enjoyable cycling area."
 
 
 32
 The court's ruling in effect dismissed the Paus' express warranty claim. We therefore treat the Paus' request for review of the denial of their summary judgment motion on this claim as an appeal from the dismissal of their claim. We review de novo a dismissal for failure to state a claim. Kruso, 872 F.2d at 1421.
 
 
 33
 The parties agree that California extends the concept of express warranty to the leasing of chattel. Pisano v. American Leasing, 146 Cal.App.3d 194, 198, 194 Cal.Rptr. 77, 79-80 (1983). Section 2313 of the California Commercial Code provides:
 
 
 34
 Express warranties by the seller are created as follows:
 
 
 35
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or the promise.(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
 
 
 36
 (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
 
 
 37
 The district court's dismissal of the Paus' express warranty claim appears to be based on the conclusion that the statements in Curry Company's brochure did not, as a matter of law, either "relate to the goods" or become "part of the basis of the bargain." This conclusion is wrong. On the basis of the testimony in this case, a reasonable jury could have concluded that Curry Company's brochure advertising its rental bikes and stating that the Mirror Lake trail was a safe cycling area, constituted a statement of fact that Curry's bikes were safe for the Mirror Lake trail and that this statement became part of the basis of the bargain. See Keith v. Buchanan, 173 Cal.App.3d 13, 220 Cal.Rptr. 392 (1985) (express warranty found based on statements in brochure).
 
 
 38
 The trial court erred in dismissing the Paus' express warranty claim. Upon remand of this case for a new trial, the Paus may present the express warranty claim to the jury.
 
 IV. Evidentiary Rulings
 
 39
 The Paus challenge numerous evidentiary decisions made by the district court during trial. We review evidentiary decisions for abuse of discretion and will not reverse absent some prejudice. Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986). The Paus must have attempted to introduce the evidence they claim was improperly excluded to preserve their right to appeal. Normally, an offer of proof must have been made to show the substance of the would-be evidence and the purpose for which a party sought to introduce it. Fed.R.Evid. 103; United States v. Beraun Panez, 812 F.2d 578, 582, modified, 830 F.2d 127 (9th Cir.1987).
 
 A. Subsequent Remedial Measures
 1. Employee Statement/Admissions
 
 40
 The Paus argue that a videotape of a Curry Company employee advising renters not to ride on the Mirror Lake Trail because it was unsafe should have been allowed in as an admission that the trail was unsafe. The videotape was made after the accident, and presumably Curry Company had implemented its new policy of prohibiting renters of its bicycles from riding on Mirror Lake Trail.
 
 
 41
 The Paus do not indicate where in the record they tried to introduce this tape and the district court denied its admission. There appears to have been no offer of proof made regarding this videotape. Thus it is unclear exactly what the videotape would have revealed and whether its exclusion was prejudicial to the Paus. We are therefore unable to review this issue.
 
 2. The New Brochure
 
 42
 The Paus also complain that they were unable to introduce Curry Company's new brochure which expressly prohibits renters from riding on Mirror Lake Trail. The analysis relating to the videotape applies to this evidence as well. Here again the Paus' failure to provide an adequate record for this appeal precludes our review.
 
 3. The Rental Bikes Prohibited Sign
 
 43
 The district court, on the basis of rule 407 of the Federal Rules of Evidence, barred from evidence as a subsequent remedial measure a sign at the bottom of the Mirror Lake trail which said, "Bicyclists stop. Bicyclists on rental bicycles not permitted on steep hill ahead." This evidence and the district court's ruling regarding it are clear, making our review appropriate. Fed.R.Evid. 103(a)(2).
 
 
 44
 The defendant's witness, Lloyd Price, testified that Curry Company was not allowed to put up any road signs of this nature. In its brief to this court, Curry expressly states that it did not erect this sign or cause it to be erected. The sign was erected by the United States Park Service. Thus though this sign was a measure taken after the decedent's accident to remedy possible dangers from riding rental bikes on the Mirror Lake trail, it was not a measure taken by Curry Company.
 
 
 45
 In Causey v. Zinke (In re Aircrash in Bali, Indonesia), 871 F.2d 812, 816-17 (9th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989), we held that rule 407 only applies to a defendant's voluntary actions. Rule 407 is based on the policy of encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. Gauthier v. AMF, Inc., 788 F.2d 634, 637 amended, 805 F.2d 337 (9th Cir.1986). A nondefendant will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant. Causey, 871 F.2d at 816-17. The trial court abused its discretion in holding that the sign erected by the Park Service should be excluded from evidence on the basis of rule 407.
 
 
 46
 Our next inquiry is to determine if the erroneous exclusion of the "no bikes" sign was prejudical. Two different and inconsistent formulations have been adopted by this court to determine whether an evidentiary error is prejudicial in a civil case. The first requires affirmance where "the jury's verdict is more probably than not untainted by the error." E.g., Haddad v. Lockheed Calif. Corp., 720 F.2d 1454, 1459 (9th Cir.1983) (emphasis added). The second states: "To reverse, we must say that more probably than not, the error tainted the verdict." E.g., Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986) (emphasis added).[2]
 
 
 47
 The Kisor formulation appears to be an inadvertent misstatement of the Haddad standard. See Kisor, 783 F.2d at 1340. However, the rationale in Haddad provides no principled basis for choosing one formulation over the other. We find that the exclusion of the no rental bikes sign was prejudical error under both the Haddad and Kisor formulations and requires reversal and remand. This evidence is directly probative of whether Curry Company made a material misrepresentation, breached any express or implied warranty, or was negligent. Because the difference between Haddad and Kisor does not determine the outcome of this case, we need not decide which provides the preferable definition of prejudical error.
 
 
 48
 B. California Bicycle Trail Safety Standards
 
 
 49
 The Paus challenge the district court's refusal to admit California's bicycle trail standards, which regulate the grade of bicycle trails, into evidence. The Paus' brief to this court contains no citations to the record indicating where they attempted to introduce this evidence. Thus the Paus' brief fails to comply with rule 28(e) of the Federal Rules of Appellate Procedure, which provides in relevant part:
 
 
 50
 If reference is made to evidence the admissibility of which is in controversy, reference shall be made to the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected.
 
 
 51
 Our own review of the record reveals no clear holding of the trial judge on the admissibility of this evidence. This incomplete state of the record is due at least in part to the Paus' failure to make an offer of proof pursuant to Fed.R.Evid. 103(a). On these grounds we decline to review the trial court's exclusion of this evidence. See Lemelson v. United States, 752 F.2d 1538 (9th Cir.1985) (declining to review trial courts exclusion of testimony where brief fails to comply with rule 28(e) and court is unable to find offer of proof in record).
 
 C. Evidence Concerning Previous Accidents
 
 52
 The court excluded evidence concerning at least one previous accident. The court did not abuse its discretion because the Paus did not attempt to introduce such testimony in a proper manner, or for an appropriate purpose. Apparently, the Paus requested that the district court take judicial notice of previous accidents. The court said that it could not and that evidence of similar accidents could only come in if they occurred under substantially similar circumstances. The court stated:
 
 
 53
 this is a foundational requirement that will have to be taken out of the presence of the jury and the court will determine at that time whether the evidence can come in. The court must first note, however, that it must be informed what the evidence is being offered for. [The] similar circumstances requirement is much more strenuous when the evidence is being offered to show the existence of a dangerous condition or causation and less strict where the evidence is being offered to show notice.
 
 
 54
 Thus the court clearly indicated what was required to introduce other accident testimony. The record shows that the Paus never tried to introduce evidence of an earlier accident in a foundational hearing outside the presence of the jury. Instead, at one point during examination of an expert witness, the Paus' attorney asked about another case involving an accident, and whether it too involved a Schwinn Bicycle rented by Curry Company. Curry Company objected to reference to the case and other cases. The court sustained the objection. It did not err.
 
 
 55
 D. Exclusion of Expert Testimony of Non-deposed Witness
 
 
 56
 Curry Company's counsel asked that he be allowed to depose one of the Paus' experts the night before the expert was to testify. The record indicates that this witness had only inspected the bikes two weeks earlier, and that Curry Company's counsel could not depose him until the night he made his request. The Paus did not object to when he was to be deposed, but where. The Paus' counsel thought he should be deposed in Livermore (where the expert lived), not Fresno (where the trial was). The court said that since the expert had to come to Fresno to testify, and the attorneys were in Fresno, the deposition should be in Fresno.
 
 
 57
 Apparently, the expert did not get to Fresno for the deposition that night, and the Paus did not present him as a witness. The Paus could have requested time to allow for the deposition to be taken so the expert witness could testify. The district court would have been best suited to decide if this were fair. The Paus' contention on appeal is that the last minute request for a deposition was unfair. The Paus emphasize that their counsel's practice is in Modesto, not Fresno (although they admit that he was in Fresno at the time the court made his ruling). The appeal of this point is without merit and we reject it.
 
 
 58
 E. Exclusion of Decedent's Alleged Last Statement
 
 
 59
 The Paus appeal the district court's exclusion of the decedent's alleged declaration that "the brakes failed." The Paus attempted to introduce the statement, Curry Company objected because it was hearsay, and the Paus pointed to several exceptions to the hearsay rule that they thought were applicable. The court rejected them all. Later the court acknowledged that its reason for rejecting the dying declaration exception contained in Fed.R.Evid. 804(b)(2) was too narrow. The court realized that this exception applies to civil cases as well as homicide cases. Thus, the court allowed the Paus to make an offer of proof on whether the statement was a dying declaration.
 
 
 60
 Curry Company contends that this court can only review the dying declaration ruling (which the Paus do not attempt to support on appeal) because the Paus discussed only this exception at the offer of proof hearing. However, it was the court that defined the scope of the offer of proof. Thus, we review the other exceptions to the hearsay rule the Paus claim applied to the decedent's statements.
 
 
 61
 The district court did not abuse its discretion in refusing to admit the decedent's statement under the present sense impression exception found in Fed.R.Evid. 803(1). The accident had occurred more than two days prior to the utterance. The record does not establish that the decedent was effectively at the scene of the accident while in the coma.
 
 
 62
 The district court refused to admit the statement as an excited utterance exception to the hearsay rule under Fed.R.Evid. 803(2). While we might reach a different conclusion, we cannot say that the district court made a clear error in judgment and abused its discretion in excluding this evidence. See Huff v. White Motor Corp., 609 F.2d 286, 291 (7th Cir.1979). Though the decedent was in a coma for two days from the time of the accident until the alleged statement was made, the record does not clearly indicate that she was still under the stress of excitement caused by the accident when the alleged statement was made. She first indicated that she needed to use the bathroom, before stating that "the brakes failed." On remand, however, we urge the trial court to carefully consider the applicability of the excited utterance exception to decedent's alleged statement.
 
 
 63
 Finally, the "catchall" exception to the hearsay rule embodied in Fed.R.Evid. 803(24) does not mandate the introduction of the statement. The exception reads:
 
 
 64
 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it ..."
 
 
 65
 The catchall exception to the hearsay rule was included in the Federal Rules of Evidence to allow for flexible responses by trial courts when unanticipated situations arise. Berger & Weinstein, Weinstein's Evidence, p 803(24) (1990). The statement is to have circumstantial guarantees of trustworthiness equivalent to those in the established exceptions. The decedent's statement in this case was made during a brief recovery from a coma. This suggests that her statement was not the result of considered self interest. However, the statement was in the decedent's interest and tended to absolve her of fault, thus possibly casting doubt on its trustworthiness. See Bulthuis v. Rexall Corp., 789 F.2d 1315, 1316 (9th Cir.1985). In light of these considerations, though we might reach a different conclusion, we cannot say that the district court abused its discretion in excluding evidence of the decedent's alleged statement about the brakes failing.
 
 V. Jury Instructions
 
 66
 The Paus appeal the district court's failure to read to the jury the instruction that failure to equip a product with available safety devices is probative evidence of a deficient design. Neither party, during the district court proceedings, caught the fact that the court did not read the instruction, which the court already had apparently agreed to include.
 
 
 67
 Fed.R.Civ.P. 51 requires a party to object to the failure to give adequate jury instructions. The Paus at no time made an objection to the jury instruction. The failure to object precludes us from reviewing this issue. Pierce v. Southern Pacific Transp. Co., 823 F.2d 1366, 1371 (9th Cir.1987).
 
 VI. Special Verdict Question
 
 68
 The Paus state that they presented evidence concerning Curry Company's breach of the implied warranty that the rented bicycle would be suitable for its intended use. They point out that the court issued a jury instruction on this point. They therefore consider it reversible error for the court not to have provided the jury a special verdict question on breach of implied warranty. However, the Paus' counsel made no objection until after the jury retired for deliberations.
 
 
 69
 Under Fed.R.Civ.P. 49(a), a party waives its right to demand submission of a special verdict question on an issue unless it objects to the failure to submit the special question before the jury retires. Burgess v. Premier Corp., 727 F.2d 826, 831 (9th Cir.1984). The Paus' counsel's discussion with the court after the jury retired was not timely even if liberally construed as an objection. The Paus therefore did not preserve their right to appeal this issue.
 
 CONCLUSION
 
 70
 The judgment of the district court is Reversed and we Remand for a new trial.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 Curry Company used the last three digits of the bicycles' serial numbers to identify its bikes; thus it occasionally had two bikes with the same identification number
 
 
 [2]
 Under Haddad, if the finding necessary for affirmance can not be made, reversal is required. See Haddad 720 F.2d at 1459 (appellant's right to jury verdict more probably than not untainted by error can only be vindicated by reversal). Likewise, under Kisor, if the finding necessary for reversal can not be made, the clear implication is that affirmance is required. See Kisor, 783 F.2d at 1340 ("[e]videntiary rulings ... will not be reversed absent some prejudice"); Jauregui v. City of Glendale, 852 F.2d 1128, 1133 (9th Cir.1988) (applying Kisor test to affirm); United States v. Lee, 846 F.2d 531, 536 (9th Cir.1988) (applying Kisor test to affirm)
 The difference between these two standards is illustrated by the divergent results obtained in a situation where an appellate court is perfectly undecided as to the effect on the jury's verdict of an error in admission or exclusion of evidence (the court believes with a probability of .5 that the error in admission or exclusion of evidence did affect the jury's verdict, and also believes with a probability of .5 that the error did not affect the jury's verdict). These two standards effectively create contradictory presumptions as to what to do in this borderline case. Under the Haddad standard the court would find prejudicial error and order a new trial. Under the Kisor standard the court would affirm.