William A. MEHOJAH and Fredricka Lou Mehojah, Plaintiffs–Appellants,

v.

Charles R. DRUMMOND as representative of the R.C. Drummond West Ranch Trust, Defendant–Appellee.

No. 93–5111.

United States Court of Appeals, Tenth Circuit.

May 22, 1995.

G. Willaim Rice (Sam Withiam with him, on the brief) of Rice, Withiam, Parmer & Bigler, Cushing, OK, for plaintiffs-appellants.

Jon D. Starr (Galen L. Brittingham and Amy L. Rumbaugh with him, on the brief) of Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, OK, for defendant-appellee.

Before KELLY, McKAY, and REAVLEY,† Circuit Judges.

† The Honorable Thomas M. Reavley, United States Circuit Judge, United States Court of Appeals– Fifth Circuit, sitting by designation.

PAUL J. KELLY, Jr., Circuit Judge.

In this diversity action, William and Fredricka Mehojah appeal from the district court's exclusion of certain evidence in their negligence action against Charles Drummond, as the representative of the R.C. Drummond West Ranch Trust.

## Background

### A.

The R.C. Drummond West Ranch Trust (the "Trust") leases pasture land in Osage County, Oklahoma, on which it grazes its cattle. In the winter of 1990, the Trust leased pasture land from Mark Fairweather, a cousin of Mr. Drummond. The fence around that pasture crossed a creek that ran through the pasture and under the adjacent highway. Attached to the permanent fence at the point where the fence crossed the creek was a "water gap" fence, which is a temporary structure (here, consisting of four strands of barbed wire) designed to break away if it is struck by debris in the creek, thereby leaving the permanent fence intact. For many years prior to the date in question, there had been a "wing fence" on the east side of the creek, extending from the point where the permanent fence attached to the water gap fence to the rail of the bridge where the highway crossed the creek. The wing fence is a permanent structure designed to preven livestock from escaping onto the highway in the event that the water gap fence is destroyed. There was no such wing fence on the west side of the creek because, until July 1989, there was an earthen berm on that side which was sufficiently steep that cattle could not escape. In July 1989, the Oklahoma highway department performed work on the bridge, removed the berm, and graded the embankment so that it was much less steep. No wing fence was installed on the west side despite the fact that the removal of the berm meant that cattle might escape on that side in the event the water gap fence was destroyed. The owner of the land, Mr. Fairweather, regularly inspected the fence and was aware that the berm had been removed.

On January 5, 1990, at approximately 1:00 p.m., the Trust placed its cattle in the pasture. Before doing so, Trust employees and Mr. Fairweather visually inspected the fence, including the water gap fence and the surrounding area, which was visible from the road. At some point later that day, the cattle broke through the water gap fence and climbed up the embankment onto the highway. At approximately 7:00 p.m., the Mehojahs, who were travelling west on the highway, rounded a curve and collided with several of the cattle, destroying the Mehojahs' car and inflicting serious injuries on the Mehojahs. The Mehojahs brought suit against Mr. Drummond, both individually and as a representative of the Trust, alleging that the cattle had been negligently released into the pasture when the fences were inadequate. The Mehojahs later dismissed without prejudice the suit against Mr. Drummond in his individual capacity. Not until after the statute of limitations had run did the Mehojahs realize that Mr. Fairweather actually owned the land in question. As a result, Mr. Fairweather was not a party to the suit.

### B.

Before trial, the Trust filed a motion in limine seeking to exclude all evidence of the fact that, either on the night of the accident or on the day after, Mr. Fairweather installed a wing fence on the west side of the creek. The motion in limine was premised on Rule 407 of the Federal Rules of evidence, which provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed.R.Evid. 407. At the hearing on the motion in limine, the Mehojahs argued that Rule 407's prohibition on evidence of subsequent remedial measures was inapplicable because

the wing fence had been erected by Mr. Fairweather, who was a non-party. The district court rejected this argument and, finding that Rule 407 applied, granted the motion in limine. During the trial, the Mehojahs made an offer of proof to the court as to Mr. Fairweather's construction of the wing fence, and the district court again disallowed the evidence on the same Rule 407 ground. Mr. Fairweather also testified at trial that when the state removed the embankment on the west side of the creek, the nature of the business required installation of a wing fence on that side. (Aplt.App. at 120). The jury returned a verdict for the Defendant, and the Mehojahs appeal.

### Discussion

On appeal, the Mehojahs argue that the trial court abused its discretion in excluding the evidence of the subsequent remedial measure. They renew the argument made to the trial court that Rule 407 should not apply under these circumstances because Mr. Fairweather was a non-defendant third party. We agree. "[R]ule 407 only applies to a *defendant's* voluntary actions;" it does not apply to subsequent remedial measures by non-defendants. *Pau v. Yosemite Park and Curry Co.,* 928 F.2d 880, 881 (9th Cir.1991). *See also TLT–Babcock, Inc. v. Emerson Elec. Co.,* 33 F.3d 397, 400 (4th Cir.1994) ("[E]vidence of subsequent repairs may be admitted where those repairs have been performed by someone other than the defendant."); *Dixon v. International Harvester Co.,* 754 F.2d 573, 583 (5th Cir.1985) ("[W]here repairs were made by a non-defendant, Rule 407 does not bar the evidence."). We reject the rule crafted by the dissent, as unsupported by the cases and unworkable, that Rule 407 applies not only to actual defendants, but also to obvious *potential* defendants. *See* Dissent at 3.

Evidence was adduced that a better fence should have been built. The Mehojahs argue that by requesting jury instructions about an Oklahoma statutory prohibition on construction of a fence on a state right-of-way, Okla.Stat.Ann. tit. 69, § 1211, the Trust placed both the issues of feasibility of building, as well as control over, the fence before the jury. While we conclude that the court should not have excluded the evidence, we do not believe that the exclusion constituted reversible error.

The mere request for a much broader instruction than given or the colloquy between the court and counsel did not make control and feasibility primary issues in the case. Despite the language of the proposed instruction, the instruction actually given merely indicated that prior approval of the State of Oklahoma was required to place a fence on a state highway right-of-way. The remainder of the instruction specifically stated that "an owner of cattle has the legal duty to exercise reasonable care to keep its cattle within the pasture enclosure and prevent cattle from running free on the highway." Aplt. App. at 50.

Having reviewed the entire record including the pleadings, we are of the view that the dispositive fact question in this trial was whether the Trust was negligent in placing cattle in a pasture where one end was secured only by a water gap fence. Indeed, at trial, Mehojahs' counsel stated that the "negligence ... is not so much the lack of Drummond building the fence, the negligence is placing the cattle on property which was improperly maintained...." Aplee. Supp.App. at 70. Given the material issue at trial, the evidence about construction of the wing fence by Mr. Fairweather (the non-party property owner) the following day would not have helped the Mehojahs' case. Indeed, such evidence is consistent with Mr. Fairweather's testimony that the water gap fence was a reasonable barrier, although the long-range solution to this problem was a wing fence in lieu of the water gap fence.

28 U.S.C. § 2111 requires us to "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." *See also* Fed.R.Civ.P. 61. The statute applies to both criminal and civil cases. *O'Neal v. McAninch,* — U.S. —, —, 115 S.Ct. 992, 997, 130 L.Ed.2d 947 (1995). Applying the nonconstitutional standard for harmless error, we are satisfied that the erroneous exclusion of the evidence did not have a substantial influence on the verdict,

nor do we have grave doubt as to whether it had such an effect. *See United States v. Jefferson,* 925 F.2d 1242, 1255 (10th Cir.), *cert. denied,* 502 U.S. 884, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991); *Hinds v. General Motors,* 988 F.2d 1039, 1049 (10th Cir.1993).

AFFIRMED.

McKAY, Circuit Judge, dissenting:

On appeal, the Mehojahs argue that the trial court abused its discretion in excluding the evidence of the subsequent remedial measure (the construction of the wing fence). They renew the argument made to the trial court that Rule 407 should not apply under these circumstances because Mr. Fairweather was a non-defendant third party. As an alternative, the Mehojahs argue that even if Rule 407 does apply, the evidence should have been admitted to demonstrate the feasibility of building the fence and to prove the fact of control over the land because the Trust contested these issues at trial. Although I would reverse only on the alternative ground, I believe the majority has incorrectly analyzed both of these arguments, and I am at a loss to comprehend its reasoning. Its compound error has led to an astonishing and, in my opinion, unjust result.

As the majority points out, there is strong authority for the proposition that Rule 407 does not apply to exclude subsequent remedial measures made by someone other than the defendant. *TLT–Babcock, Inc. v. Emerson Elec. Co.,* 33 F.3d 397 (4th Cir.1994); *Pau v. Yosemite Park and Curry Co.,* 928 F.2d 880, 888 (9th Cir.1991); *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1204 (8th Cir.1990); *Dixon v. International Harvester Co.,* 754 F.2d 573, 583 (5th Cir.1985); *Lolie v. Ohio Brass Co.,* 502 F.2d 741, 744 (7th Cir.1974) (per curiam); *Steele v. Wiedemann Machine Co.,* 280 F.2d 380, 382 (3d Cir.1960). The reason for the exception is that

> Rule 407 is based on the policy of encouraging *potential* defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them. A nondefendant, however, will not be inhibited from taking remedial measures if such actions are allowed into evidence against a defendant.

*TLT–Babcock* (*citing* Fed.R.Evid. 407 advisory committee's note) (emphasis added); *see also Pau,* 928 F.2d at 888 (same).

Like the majority, I agree with the logic of our sister circuits. However, I believe the facts of this case do not warrant application of this exception from Rule 407. In the leading cases, the third party that made the subsequent remedial measure was never a potential defendant. For example, in *TLT–Babcock,* the remedial measure (redesign of a fan shaft) was made several years after the events that gave rise to the suit by a public agency that had no connection with those events. Similarly, in *Pau,* the remedial measure (erection of a road sign) was made by the National Park Service, which could not have been sued on the underlying facts. 928 F.2d at 888. In *Dixon,* the plaintiff was injured when a tree branch came through the cab of his tractor. In his suit against the manufacturer, he successfully introduced evidence that his employer, International Paper, had modified the cab to prevent such accidents. 754 F.2d at 583. Once again, his employer was not a potential defendant because it was protected by the Worker's Compensation scheme.

The critical distinction in this case is that, although never subsequently sued, at the time Mr. Fairweather erected the wing fence (the day after the accident) he was clearly a *potential* defendant. I have found no cases where a subsequent remedial measure was admitted when made by an obvious potential defendant. It is undisputed that Mr. Fairweather, as the owner of the pasture from which the cattle escaped, could have been a defendant in this suit. Thus, the policy of Rule 407 (encouraging potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them) applies to Mr. Fairweather. The Mehojahs admit that the only reason he was not party to the suit was that they did not discover he owned the land until after the running of the applicable statute of limitations. Although I do not doubt the Mehojahs' good faith in this case, application of the Rule 407 exception to these facts would create a potential for abuse in other cases. Plaintiffs could choose to sue only some po-

tential defendants in order to have evidence of other potential defendants' subsequent remedial measures admitted. This would contravene the public policy embodied in Rule 407.

The Mehojahs also contend that the district court erred by allowing the defendant to contest the feasibility of constructing a wing fence without allowing them to rebut the defendant's argument with evidence that such a fence was actually built by Mr. Fairweather the day after the accident. In the course of the trial, the defendant requested that certain additional jury instructions be given at the close of the evidence. The defendant noted that the wing fence was built on the state highway right-of-way, and asked that the court take judicial notice of Okla.Stat. tit. 69, § 1211 of the Oklahoma Statutes, which provides that it is a misdemeanor for a person to construct a fence on a state highway right-of-way. The proposed instructions read as follows:

> It is the law in the State of Oklahoma that any person who constructs or maintains a fence upon the right-of-way or any designated state or federal highway is guilty of a misdemeanor and each day such violation continues shall be a separate offense.
>
> You are instructed that if the landowner or the Defendant in this case had constructed a fence on the west side of the creek from the permanent fence to the west side of the bridge across the state highway right-of-way, he would have been committing a misdemeanor under Oklahoma law.

(Appellant's App. at 30–31). The actual instructions given to the jury differed slightly from those requested, stating in pertinent part:

> An owner of cattle has no authority to place a fence on a state highway right of way without prior approval of the State of Oklahoma. However, an owner of cattle has the legal duty to exercise reasonable care to keep its cattle within the pasture enclosure and prevent cattle from running free on the highway.

(Appellant's App. at 50).

The Mehojahs argue that in requesting the instructions concerning the Oklahoma statutory prohibition on construction of a fence on a state right-of-way, the Trust squarely contested the issues of its control over the right-of-way and the feasibility of erecting a wing fence. The second sentence of Rule 407 excepts from the general rule evidence of subsequent remedial measures that is offered solely for the purpose of establishing ownership, control, or feasibility. Accordingly, the Mehojahs argue that the trial court erred in excluding the evidence of the building of the wing fence. The Trust responds that the evidence was nonetheless properly excluded because the exceptions in Rule 407 are still subject to the constraints imposed by Rules 401 through 403, and the evidence here was cumulative and more prejudicial than probative.

. The threshold question raised by the Mehojahs' argument is whether the Trust contested the issues of feasibility and control. It is clear that those issues were contested and that the trial court was fully aware of that fact. After the Trust filed its requested additional jury instructions concerning the statutory prohibition on building fences on state right-of-ways, the court held a hearing on the matter. The court noted that it had previously ruled against admission of the evidence of the building of the fence, based on the exclusionary aspect of Rule 407, and stated the problem as follows:

> THE COURT: All right. As far as I'm concerned, if you're asserting he [Mr. Fairweather] had no right to do it and then a day after it occurred he actually did it, it seems to me under Federal Rule 407 it makes it admissible.
>
> This rule, the subsequent remedial measure rule, does not apply.... It shows that he went out there and made it. He had control of it, didn't he?
>
> MR. STARR: Your honor, I would argue that it does not show that he had control. It shows he was trying to exercise control over the state highway right of way. But whether or not under the law he had control—
>
> . . . .
>
> THE COURT: So as far as I'm concerned you're taking a contrary position. On the one hand you're asserting 407; on the

other hand you say he didn't have any right to do it at all. *And as a matter of fact, the jury would get the idea from that instruction, since he had no right he couldn't do it.* The fact is he did it.

(Appellant's App. at 131–32) (emphasis added). Despite the court's realization that the defendant was contesting control, thus bringing the exception to Rule 407 into play, the court declined to allow the evidence in. That decision appeared to be based on the court's initial determination that it would not incorporate the defendant's proposed instruction into its final jury instructions:

THE COURT: Well, the undisputed evidence here is, though, the fence on the east side was apparently put up by the owner of the property, and the one that's on the west side now, that was determined should go up after this incident occurred, of which the jury hasn't heard anything about the fence.... The evidence shows, as you state, that he placed that fence in there, misdemeanor or no misdemeanor. He had sufficient control that he did that.

*So I think as far as this lawsuit is concerned we'll just leave things in exactly the shape they are now, and I doubt if I'll get into instructing on this misdemeanor business* since the owner has, the evidence shows, placed the other fence in there that was there, and had that fence been in there, obviously the cattle, it seems to show, would not have gotten onto the highway.

(Appellant's App. at 135–36). As set forth above, regardless of what the district court's initial determination as to the defendant's proposed instruction may have been, the court ultimately gave the jury a modified version of that instruction. When it did so, the defendant's controversion of its control over the right-of-way and the feasibility of erecting the fence there, which had previously been evident only in the parties' motions and the hearings in chambers, suddenly was placed directly before the jury. Consequently, Rule 407 clearly provided that the evidence of the construction of the fence was not barred. The rationale behind the exception in Rule 407 is simply that, by raising the questions of control or feasibility, "[the] de-

fendant in effect has waived the protection of Rule 407, for it would be unfair not to allow the plaintiff to meet the issue by showing [the] defendant's conflicting conduct—the subsequent remedial measures." 2 Weinstein's Evidence ¶ 407[04] at 407–30 to –31 (1993) (citations omitted).

I recognize the potential for misuse of evidence of subsequent measures, even when offered for a purpose acceptable under Rule 407. Clearly, the question of the feasibility of remedial measures may bear upon the question of negligence. However, this court has held that Rule 407 should be narrowly construed, and that evidence of subsequent remedial measures should be admitted where there exists any purpose other than proof of negligence. *Rimkus v. Northwest Colorado Ski Corp.,* 706 F.2d 1060, 1066 (10th Cir. 1983); *Herndon v. Seven Bar Flying Serv., Inc.,* 716 F.2d 1322, 1331 (10th Cir.1983), *cert. denied sub nom. Piper Aircraft Corp. v. Seven Bar Flying Serv., Inc.,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). The proper safeguard in such cases is to instruct the jury that its consideration of the evidence is to be limited to those other purposes and is not to be considered as proof of negligence. *See Rimkus,* 706 F.2d at 1064; *Herndon,* 716 F.2d at 1330.

Incredibly, the majority holds that the evidence should have been admitted for all purposes, including proof of negligence, but then finds that the error was harmless. How the majority can conclude that the plaintiffs were deprived of their legal right to show graphically both negligence and control by the act of Mr. Fairweather and then conclude that both of these deprivations singly and cumulatively are harmless is beyond me. This conclusion is particularly baffling since this case involved innocent plaintiffs against defendants who had a non-delegable duty to prevent the escape of these cattle. Since the Trust had a non-delegable duty to take reasonable care, it was essential for the jury to know if it would have been feasible for the Trust to do more than it did (i.e., inspect the fence) (and, under the majority view, for the jury to be told that they could consider the subsequent actions in determining negligence). As the trial court recognized (Appel-

lant's App. at 132), the jury instruction concerning the lack of a right to build on a state right-of-way could only have left the jury with the impression that the defendant was legally barred from building the fence prior to the accident, and therefore could not have been negligent in failing to do so. This impression was not countered by the testimony of Mr. Fairweather as to the need for such a fence because that testimony did not address the questions of control and feasibility raised by the jury instruction.

Since the exclusion of the evidence and the resulting impression essentially removed the question of negligence from the jury, the error affected a substantial right of the plaintiffs, and thus, was far from harmless. In fact, since the judge properly instructed the jury that, under Oklahoma law, the defendants had a non-delegable duty to keep the cattle from escaping, I am unable to discern any other basis for the jury to have found for the defendants. I would therefore vacate the judgment and remand for a new trial.