999 F.2d 544
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Raymond J. SAVIGNAC; E. Briggs Savignac, Plaintiffs-Appellants,
v.
William R. BUCHANAN, individually; Harbor Construction
Ltd., Defendants-Appellees.
Raymond J. SAVIGNAC; E. Briggs Savignac, Plaintiffs-Appellants,
v.
William R. BUCHANAN, individually; Harbor Construction
Ltd., Defendants-Appellees.
 Nos. 91-35527, 91-35618.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 13, 1993.*
Decided July 16, 1993.
 
 Before GOODWIN, FARRIS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Raymond J. Savignac and his son E. Briggs Savignac (the "Savignacs") appeal the district court's judgment following a jury verdict in favor of defendants William Buchanan and Harbor Construction, Ltd., in the Savignacs' action for fraudulent misrepresentation, wrongful retention of down payment, and violations of federal and state racketeering laws. The Savignacs also appeal the district court's judgment in favor of Buchanan on his counterclaim for libel based on publication of several allegedly defamatory letters by the Savignacs and their attorney. We affirm.
 
 BACKGROUND
 
 3
 In March 1987, the Savignacs came to Oregon from their home in Florida looking for business opportunities, and for real estate for a home. They met Buchanan, owner of Harbor Construction, Ltd. ("Harbor"), at a partially completed house within the Harbor Crescent subdivision. Buchanan identified himself as the builder, owner and architect of the houses within the subdivision. The Savignacs subsequently signed an "earnest money agreement" to purchase a lot at the subdivision with a $1000 earnest money deposit and a closing date two months from the signing of the agreement. The parties also entered into a design contract providing that Harbor was engaged to design a single family house for the Savignacs for an initial payment of $2000.
 
 
 4
 About one month later, Ray Savignac and Buchanan drafted and executed an addendum to the earnest money agreement. The addendum eliminated a contingency in the original agreement, extended the closing date an additional month, and reflected the fact that Buchanan had received a pick-up truck from the Savignacs as a nonrefundable down payment valued at $8500.
 
 
 5
 A few weeks after the addendum was executed, Ray Savignac again visited Buchanan at the subdivision. After Savignac reviewed sketches of preliminary house designs, he and Buchanan agreed that the designing should be delayed until the Savignacs had a better sense of their budget. At the Savignacs request, Buchanan sent them rough schematic drawings and a statement of the amount of time he had devoted to the project.
 
 
 6
 After additional correspondence and further delays, the Savignacs wrote Buchanan seeking to rescind both the earnest money and design contracts. The Savignacs demanded return of the $11,500 they had paid on the contract because Buchanan's plans were inadequate and, they alleged, they had been defrauded. Over the next nine months, the Savignacs and their counsel wrote a number of letters complaining about Buchanan's "fraudulent" conduct. These letters were sent to government officials and agencies, Harbor's bank, and the local newspaper.
 
 
 7
 In March of 1989, the Savignacs filed a complaint in the U.S. District Court in Oregon asserting claims of common law fraud and negligence, and violations of federal and state racketeering laws. The Savignacs amended their complaint, adding a claim for money had and received for the $2000 paid on the contract. Buchanan answered the amended complaint and plead a counterclaim for libel based on the allegedly defamatory letters. A trial was conducted before Judge Burns in May of 1990. Judge Burns granted directed verdicts on the Savignacs' federal and state racketeering claims, but let the other claims and counterclaims go to the jury.[1]
 
 
 8
 While the jury was deliberating, plaintiffs' counsel moved to amend the complaint to add a claim for rescission based upon innocent misrepresentation, and to submit an interrogatory to the jury on a money had and received claim for return of $8500 in additional down payment. The district court denied the motions as untimely.
 
 
 9
 The jury returned a verdict in favor of Buchanan and Harbor on the Savignacs' claims. The jury found in favor of Buchanan on his libel claim, finding four of the six letters submitted to them were libelous. The jury further concluded, however, that Buchanan was only entitled to recovery on one of those letters (the "Shoberg letter"),[2] but the jury was unable to reach a verdict on the amount of damages. Based on a prior stipulation of the parties agreeing to accept the jury's verdict on the issues decided and have the district court decide any remaining issues, the district court issued an opinion, order and judgment on November 6, 1990 awarding Buchanan $35,000 in general damages, $10,000 in special damages, and the remaining $1000 in escrow from the Savignacs real estate transaction.
 
 DISCUSSION
 
 10
 The Savignacs argue (1) that the district court erred in awarding Buchanan $35,000 in general damages and $10,000 in special damages because there were no actual damages caused by the defamatory Shoberg letter; (2) that the district court abused its discretion by admitting portions of Buchanan's testimony because it was hearsay; (3) that the district court erred when it failed to grant the Savignacs leave to amend their complaint during jury deliberations; and (4) that the court erred when it failed to submit an additional jury interrogatory after the jury had begun deliberations.
 
 I. Damages
 
 11
 The Savignacs attack the district court's award of general and special damages.[3] We review the district court's determination of the amount of damages for clear error. See Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991), cert. denied, 112 S.Ct. 1567 (1992).
 
 A. General Damages
 
 12
 The court's award of $35,000 in general or presumed damages was warranted by Oregon law. The Oregon Supreme Court has held that if a communication is "capable of a defamatory meaning and was so understood by the recipients, damage is assumed although no special harm or loss of reputation results therefrom." Beecher v. Montgomery Ward & Co., 517 P.2d 667, 670 (Or.1973). Oregon law also provides that "the general damages for which the jury may award recovery include humiliation and mental suffering," and no proof or special pleading of this harm is required. Wheeler v. Green, 593 P.2d 777, 791 (Or.1979).
 
 
 13
 Even though Buchanan was not required to proffer evidence of harm to support an award of general damages, "a plaintiff does not have to rest on this presumption but may submit evidence of general damage to such reputation." Cook v. Safeway Stores, Inc., 511 P.2d 375, 378 (Or.1973). The district court's award of general damages here was supported by such evidence in the record. Buchanan testified that after the Shoberg letter, Harbor was unable to find work as a builder, projects were held up without explanation, and sales of lots in the subdivision ceased while sales of lots elsewhere in town were brisk. He also testified as to the mental anguish and humiliation he experienced on account of the defamatory letters. Further, other testimony from local planning officials and homeowners in the subdivision described how Buchanan's reputation plummeted during the relevant time period.
 
 
 14
 Given the limited scope of our review on appeal and the inexact nature of general or presumed damage determinations in libel cases generally, see Bruce W. Sanford. Libel and Privacy § 9.5 at 447 (2d ed. 1991), we cannot say that the amount of the district court's award of $35,000 in general damages was clearly erroneous.
 
 B. Special Damages
 
 15
 We similarly affirm the district court's award of $10,000 in special damages, or as the district court phrased it, damages for "financial harm." In order to support an award of special damages in a libel action, Oregon law requires that the defamation plaintiff prove that the defamatory statement was a "substantial factor" in causing the harm. See Benassi v. Georgia-Pacific, 662 P.2d 760, 765 (Or.App.1983). Buchanan testified that he and Harbor suffered at least $10,000 in damages in their transactions with Jane Carr, a woman with whom Buchanan was embroiled in a contract dispute. The district court's award of $10,000 in special damages was not clearly erroneous given the ample testimony in the record that the defamatory letters, including the Shoberg letter, were substantial factors in causing at least that much harm.
 
 II. Alleged Hearsay Testimony
 
 16
 The Savignacs further argue that the district court erred by admitting a portion of Buchanan's testimony because it was inadmissible hearsay. "We review evidentiary decisions for abuse of discretion and will not reverse absent some prejudice." Pau v. Yosemite Park & Curry Co., 928 F.2d 880, 887 (9th Cir.1991).
 
 
 17
 Over an objection by counsel for the Savignacs, the district court allowed Buchanan to describe a telephone conversation he had with Chris Minor, attorney for Jane Carr. Buchanan testified that Minor said to him, "I have a client who is an old lady and not particularly used to dealing with contracts and we should try and work something out." The statement was not offered for the truth of the matter asserted, but instead to show that Minor and Buchanan were engaged in cordial negotiations to resolve the Carr dispute prior to the date of the Shoberg letter, and that such negotiations were discontinued after the letter. The district court did not abuse its discretion because the statement was not hearsay. Even if it were, however, the error was harmless because the substance of the statement was not prejudicial regarding any material issue in the case.
 
 
 18
 III. Refusal to Grant Leave to Amend Under Rule 15(b)
 
 
 19
 The Savignacs argue that district court erred by failing to grant them leave to amend their complaint under Fed.R.Civ.P. 15(b) to add claims for rescission based upon innocent misrepresentation, and money had and received for the $8500 credited for the pickup truck delivered to Buchanan as a down payment.
 
 
 20
 A. Rescission Based on Innocent Misrepresentation
 
 
 21
 On the third day of jury deliberations in this case, counsel for the Savignacs moved the court for leave to amend to add a claim for rescission based on innocent misrepresentation. The district court denied the motion as untimely. We review that decision for an abuse of discretion, Galindo v. Stoody Co., 793 F.2d 1502, 1512 (9th Cir.1986), and find no abuse of discretion.
 
 
 22
 Rule 15(b) permits the amendment of pleadings to conform to the evidence "when the parties expressly or impliedly consent to the trial of unpleaded issues," id., but the rule "does not permit amendments to include issues which may be 'inferentially suggested by incidental evidence in the record.' " Consol. Data Terminals v. Applied Digital Data Sys., 708 F.2d 385, 396 (9th Cir.1983) (quoting Cole v. Layrite Prods. Corp., 439 F.2d 958, 961 (9th Cir.1971)). Moreover, we have held that "late pleading amendments are improper under the rule if they cause substantial prejudice to the opposing party." Consol. Data, 708 F.2d at 396. Here, any evidence relating to an innocent misrepresentation claim was merely suggested inferentially by other incidental evidence and it cannot fairly be said that the parties expressly or impliedly consented to trial of that unpleaded issue. Further, allowance of the late pleading amendment would have substantially prejudiced the defendants because the Savignacs made their motion while the jury was deliberating; the defendants necessarily would have been precluded from presenting argument and evidence of available defenses to the amended claim.
 
 B. Money Had and Received
 
 23
 In response to a note from the jury during deliberations inquiring about return of the $8500 pickup truck down payment, counsel for the Savignacs moved to amend the complaint to include a claim for money had and received for the truck. Again, the district court did not abuse its discretion by denying the Rule 15(b) motion. The parties did not expressly or impliedly consent to trial of the issue, and defendants would be substantially prejudiced if the amendment were allowed because they would have been precluded from presenting argument and evidence of available defenses.
 
 IV. Submission of Jury Interrogatory
 
 24
 Finally, the Savignacs argue that the district court erred by refusing to submit to the jury an additional jury interrogatory after the jury had already retired for deliberations. Our decision in Pau v. Yosemite Park & Curry Co., 928 F.2d 880 (9th Cir.1991) forecloses this argument. There we held that "a party waives its right to demand submission of a special verdict question on an issue unless it objects to the failure to submit the special question before the jury retires." 928 F.2d at 891 (emphasis in original). The Savignacs waived their right to demand submission of the jury interrogatory in question by failing to object to the special verdict form before the jury retired.
 
 
 25
 AFFIRMED.
 
 
 26
 Appellees' request for double costs and attorneys fees is DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The district court did, however, rule sua sponte that one of the allegedly defamatory letters was absolutely privileged
 
 
 [2]
 Of the four letters found to be libelous, the jury found that claims based upon two of them were barred by the statute of limitations, and that Buchanan and Harbor were not damaged by one other letter. The jury found liability only on one of the letters--the February 16, 1988 letter from the Savignacs to Mike Shoberg. Mike Shoberg worked as the Assistant Planning Director or the City of Newport's Office of Planning and Development. The Savignacs letter to him stated: "We believe that we were fraudulently induced into purchasing our lot" by Buchanan
 
 
 [3]
 We reject appellees' suggestion that the Savignacs failed to preserve these issues for appeal. The record reveals that counsel for the Savignacs sufficiently moved the court for a directed verdict pursuant to Fed.R.Civ.P. 50(b) so as to preserve the matters raised here on appeal