**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 95-11168

TRITON ENERGY CORP; TRITON INDONESIA INC.,

Plaintiffs - Appellees,

VERSUS

DAVID A HITE,

Defendant - Appellant.

Appeal from the United States District Court
For the Northern District of Texas
(3:93-CV-1533-P)
December 6, 1996

Before JONES, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

DUHÉ, Circuit Judge:[1]

David A. Hite, appealing from a summary judgment entered in favor of Triton Energy Corporation and Triton Indonesia, Inc. (collectively "Triton"), contends that the district court incorrectly concluded that a settlement letter to which Hite is a signatory constituted Hite's personal guaranty as a matter of law. Because we hold the language of the settlement letter unambiguously does not comprise a guaranty, we reverse the district court's

---

[1]Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

judgment and render judgment in favor of Hite dismissing the cause.

## I.

Hite is the president and a director of Nordell International Resources, Ltd., ("Nordell") and International Veronex Resources, Ltd.,[2] ("Veronex"), Nordell's parent corporation. In 1982, Nordell agreed with Pertamina, the state-owned oil company of the Republic of Indonesia, to perform secondary recovery and rehabilitation operations in Indonesian oil and gas fields. In furtherance of this project, Nordell commenced negotiations in Indonesia with Triton, which resulted in a farmout agreement (the "ENIM Agreement") which was executed on October 7, 1988.

Upon returning to the United States, Hite alleged he had been physically threatened and detained in Indonesia and coerced into entering into the ENIM Agreement. Accordingly, Joseph Laferty, another officer of Nordell, notified Triton's counsel on October 24, 1988, of the alleged duress and requested that the parties meet to discuss the status of the ENIM Agreement. Triton, in response to the claim that the ENIM Agreement was voidable, sued Nordell, Veronex, Hite, and Laferty in the United States District Court for the Northern District of Texas (the "1988 litigation") seeking, inter alia, a temporary restraining order and preliminary and permanent injunctive relief preventing the defendants from

---

[2]Formerly Veronex Resources, Ltd.

interfering with the Indonesian government's approval of the project and requiring them to continue to perform their obligations under the ENIM Agreement. The TRO issued on October 31, 1988, was effective until November 21, 1988.

Meanwhile, the parties initiated discussions to settle the 1988 litigation. As a result of these negotiations, counsel for the defendants submitted to Triton on November 13, 1988, a settlement letter stating, in relevant part,

> My clients have instructed me to advise you as follows:
>
> (1) They hereby withdraw their position that the [ENIM Agreement is] unenforceable at Nordell/Veronex's option due to duress on the part of David A. Hite when he signed those documents on behalf of Veronex and Nordell.
>
> (2) In their individual capacities, and in their representative capacities as officers and directors of Nordell and Veronex, and as the act and deed of those corporations, David A. Hite and Joseph J. Laferty, jointly and separately, hereby ratify and reaffirm in their entirety, without reservation, all of the terms and conditions of the [ENIM Agreement] (including the Farmout Agreement, the Joint Operating Agreement, and the accounting document), and hereby assure you that Veronex and Nordell will continue to abide by and perform according to the terms of those documents.
>
> (3) . . . Messrs. Hite and Laferty advise you that they believe [after consultation with counsel] that they are duly authorized to make the statements and assurances contained in this letter on behalf of Veronex and Nordell.
>
> * * *
>
> (5) My clients wish to have a good future working relationship with Triton, and agree to work together with Triton in good faith toward Triton Indonesia, Inc.'s successful assumption of the Operatorship of the ENIM Project for the future benefit of all parties. Toward that end, we look forward to the end of the litigation between my clients and yours . . . .

Hite signed the letter as "President and Director" of Veronex and Nordell and in his individual capacity.  Upon accepting the settlement offer, Triton obtained dissolution of the TRO and dismissal of the 1988 litigation.

Subsequently, disputes arose between Nordell and Triton over the performance of the ENIM Agreement.  In January 1990, Nordell filed a demand for arbitration.[3]  Triton counterclaimed, alleging non-performance by Nordell.  Arbitration resulted in an award in favor of Triton, condemning Nordell and Veronex to pay Triton $930,821.00, reducing Nordell's interest in the ENIM project to a five percent "net profits" interest, and ordering Nordell to refrain from participating in or interfering with the operation of the project.  Denying Nordell's motion to vacate the arbitration award, the United States District Court for the Central District of California confirmed the award and entered judgment against Nordell and Veronex, and the Ninth Circuit Court of Appeals affirmed.[4]

After repeated unsuccessful attempts to collect the judgment from Nordell and Veronex, Triton sued Hite in Texas state court,

---

[3]Hite was not a party to the arbitration proceedings, but did participate as one of Nordell's representatives.

[4]The Ninth Circuit affirmed the district court's confirmation of the award against Nordell, but reversed as to Veronex and remanded to the district court to determine whether Veronex consented to having the arbitrators decide if it was Nordell's alter ego, and if it did not consent, to determine de novo whether Veronex was in fact Nordell's alter ego. Nordell Int'l Resources, Ltd. v. Triton Indonesia, Inc., 999 F.2d 544 (9th Cir. 1993) (TABLE) (text at 1993 WL 280169), cert. denied, 510 U.S. 1119 (1994).

4

alleging the November 13, 1988 letter contained a personal guaranty by Hite, so that Hite was personally obligated to pay to Triton all sums owed and unpaid by Nordell and Veronex under the judgment. Hite removed the cause to the United States District Court for the Northern District of Texas based on diversity of citizenship. Triton and Hite then filed opposing motions for summary judgment. The district court rejected Hite's contention that under the doctrine of res judicata Triton was precluded by the previous arbitration proceedings from suing him based on the November 13, 1988 letter and concluded, based "solely on the four corners of the November 13[, 1988] letter," that Hite "accepted individual[] liability for the performance of the ENIM Agreement" as a matter of law. Accordingly, the district court granted Triton summary judgment and ordered Hite to pay Triton $848,557.00 plus prejudgment interest, costs, and attorneys' fees. Hite timely appealed.

On appeal, Hite contends the district court erred by finding the November 13, 1988 letter, on its face, unambiguously establishes a guaranty by Hite of the obligations of Nordell and Veronex under the ENIM Agreement. Further, contends Hite, the circumstances surrounding the generation of this letter demonstrate that the letter was not intended to be a guaranty. Instead, the letter was meant to provide that neither Nordell nor Veronex would pursue a claim that the ENIM Agreement was voidable due to duress suffered by Hite, to confirm Hite's and Laferty's authority to act

5

on behalf of Nordell and Veronex, and to assure that Nordell and Veronex, as well as Hite and Laferty, individually, would not hinder the performance of the ENIM Agreement, thereby convincing Triton to cease the 1988 litigation and to commence operations. Alternatively, Hite argues that if the court, from the language of the letter and the circumstances surrounding its execution, cannot conclude as a matter of law that the letter is not a guaranty, then the letter is ambiguous and an issue of material fact exists which precludes summary judgment. Finally, Hite asserts the district court erred by concluding that Triton's claim was not barred by res judicata, by failing to conclude that Triton's claim was barred by the sole remedies clause of the ENIM Agreement because Triton had already forfeited Nordell's net profits interest in the project, and by awarding Triton attorneys' fees. Because we hold that the November 13, 1988 letter unambiguously is not a personal guaranty by Hite, we need address only one of Hite's other contentions.

Hite's contention that res judicata bars Triton's claim warrants comment. Hite argues Triton could have raised its current claim in the arbitration proceedings wherein the binding effect of the November 13, 1988 letter was fully litigated as to Nordell and Veronex. Because Triton did not, it is barred from asserting that claim now.

"In this circuit, an action is barred by the doctrine of res judicata if: 1) the parties are identical in both actions; 2) the prior judgment was rendered by a court of competent jurisdiction;

6

3) the prior judgment was final on the merits; and 4) the cases involve the same cause of action." Travelers Ins. Co. v. St. Jude Hosp., 37 F.3d 193, 195 (5th Cir. 1994) (citing Nilsen v. City of Moss Point, 701 F.2d 556, 559 (5th Cir. 1983) (en banc)), cert. denied, __ U.S. __, 115 S.Ct. 1696 (1995). The parties do not contest that the second and third requirements for application of the doctrine have been met with respect to the arbitration proceedings. Further, Hite contends he was a party to the arbitration proceedings, inasmuch as the Ninth Circuit precluded his third-party complaint against Triton in subsequent related litigation on the basis of res judicata because he was "virtually represented" in the arbitration proceedings. See Heineman v. Veronex Resources Ltd., 50 F.3d 14 (9th Cir. 1995) (TABLE) (text at 1995 WL 89372). Triton neither concedes nor contests this requirement. Instead, the merit to Hite's res judicata defense lies in whether the arbitration proceedings and the current suit "involve the same cause of action."

"To determine whether the same cause of action is involved, our court utilizes a transactional test." Travelers Ins. Co., 10 F.3d at 195. Under this test, the critical issue is whether the claimant bases the two actions on the same nucleus of operative facts. Id. (quoting In re Howe, 913 F.2d 1138, 1144 (5th Cir. 1990)). The district court concluded that Triton was not attempting to relitigate the liability issues decided in the arbitration proceedings; rather, it seeks only to enforce the

7

judgment arising out of those proceedings pursuant to Hite's obligation as guarantor. Accordingly, because Hite's obligation is secondary, to be performed only after the principal obligors, Nordell and Veronex, defaulted on the judgment, Triton's action is not barred by res judicata. Reviewing the district court's application of the doctrine de novo, Production Supply Co. v. Fry Steel Inc., 74 F.3d 76, 78 (5th Cir. 1996), we agree.

In Travelers Ins. Co., St. Jude Hospital of Kenner, Louisiana, Inc. ("SJH"), was the general partner of a limited partnership, and was a co-defendant with the partnership in a lawsuit filed by Travelers Insurance Company ("Travelers"). Travelers obtained a judgment of liability against the partnership, but not against SJH. When efforts to collect the judgment from the partnership failed, Travelers sued SJH and moved for summary judgment on the ground that Louisiana law required the partner to pay the debts of the partnership. SJH also moved for summary judgment, asserting that Travelers' claim was barred by res judicata, as SJH had been a defendant in the partnership litigation and Travelers was required to bring all of its claims, including this claim of secondary liability, in that suit.

We affirmed the district court's award of summary judgment to Travelers. The sole issue was whether the current case involved the same cause of action as the partnership litigation. Relying on our decision in FDIC v. Mmahat, 960 F.2d 1325 (5th Cir. 1992), cert. denied, 506 U.S. 1078 (1993), we concluded that Travelers'

8

action against SJH was not based merely on a new theory of liability, but on the pre-existing judgment against the partnership and SJH's secondary obligation as general partner under Louisiana law. Thus, Travelers' claim against SJH did not arise from the same nucleus of operative facts as the partnership litigation.

The current suit is indistinguishable from Travelers Ins. Co. Under either Texas or California law, see infra note 6, Hite's liability as guarantor is secondary. See Republic Nat'l Bank v. Northwest Nat'l Bank, 578 S.W.2d 109, 114 (Tex. 1978); Manuel v. Hicks Iron Works, 14 P.2d 756, 758 (Cal. 1932) (citing Bank of Italy v. Symmes, 5 P.2d 956 (Cal. Ct. App. 1931)); Somers v. United States Fidelity & Guar. Co., 217 P. 746, 749 (Cal. 1923). Triton does not attempt to assert a new theory of liability on the ENIM Agreement, but only to recover the existing judgment against Nordell and Veronex by enforcing Hite's secondary obligation as guarantor. Accordingly, insofar as the district court held Triton's claim against Hite as guarantor is not barred by the doctrine of res judicata, it was correct.

## II.

Our review of the district court's grant of summary judgment is de novo, applying the same standard as the district court. Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc., 55 F.3d 181, 183 (5th Cir. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c). All evidence is viewed in the light most favorable to the nonmoving party, and factual controversies are resolved in the nonmoving party's favor. Royer v. Citgo Petroleum Corp., 53 F.2d 116, 118 (5th Cir. 1995). "To the extent a district court's grant of summary judgment is based on an interpretation of state law, our review of that determination is also de novo." Floors Unlimited, Inc., 55 F.3d at 184.

Triton argues the district court correctly concluded, as a matter of law, that the plain language of the November 13, 1988 letter unambiguously established the instrument as a guaranty. Triton insists the words "ratify," "reaffirm," and "assure" in the second paragraph of the letter, when given their ordinary and generally accepted meaning, inescapably sound of guaranty. Additionally, Triton maintains Hite's intent to bind himself personally is evidenced both by the "[i]n their individual capacities" language of paragraph two and by his execution of the letter "[i]ndividually." To conclude Hite executed the letter in his individual capacity only to indicate he would not attempt to interfere with operations under the ENIM Agreement renders the signature and other "individual capacity" language meaningless, argues Triton, as Hite was already obligated to so refrain. Relying primarily on our decision in Texas Commerce Bank Nat'l Ass'n v. Capital Bancshares, Inc., 907 F.2d 1571 (5th Cir. 1990),

10

we must disagree.[5]

In <u>Texas Commerce Bank</u>, Capital Bancshares, Inc., executed a promissory note in favor of Texas Commerce Bank, N.A.  On the same day, the directors of Capital executed a letter agreement providing that, if Capital did not pay the principal and accrued interest on the note when due, they would "cause [Capital] to have sufficient funds" to pay the overdue amount, this obligation being deemed satisfied under the letter agreement "only when [Texas Commerce] has received such funds."  Capital then defaulted on the note, and Texas Commerce sued Capital for the amount due on the note and the directors for breach of the letter agreement.  On summary judgment, the district court rendered judgment that Texas Commerce take nothing from the directors, finding the letter agreement to be merely a "comfort letter" and not a guaranty.  Affirming the district court, we concluded:

> Under Texas law, . . . [i]n order for a guaranty to be enforceable it must, with reasonable clearness, evidence an intent on the part of a party to become liable on an obligation in the event of default by the primary obligor.  A guarantor is a "favorite of the law" and a guaranty is therefore construed strictly in favor of the guarantor.  A guarantor's undertaking may not be extended by construction or implication.
> The letter agreement does not evidence an intent on the directors' part to become liable in the event of Capital's default.  An agreement to "cause [a debtor] to have sufficient

---

[5]Arguing the guaranty issue in brief, the parties cite both California and Texas law, but concede the result would be the same under either state's substantive law.  The district court, without mention of a choice-of-law question, applied Texas law.  Accepting the parties' concession, we will follow the district court's lead and resolve the guaranty issue under Texas law.

funds" simply does not constitute a promise to answer for the debt of another.

Texas Commerce Bank, 907 F.2d at 1574 (citations omitted). Likewise, we find that the language of the November 13, 1988 letter does not evidence an intent by Hite to become liable for the obligations of Nordell under the ENIM Agreement.

In construing a written contract, the court's primary concern is to ascertain the true intent of the parties. Reilly v. Rangers Management, Inc., 727 S.W.2d 527, 529 (Tex. 1987); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). To do so, the court must examine the entire writing in order to harmonize and to give effect to all of its provisions. Coker, 650 S.W.2d at 393. No single provision, taken alone, can have controlling effect; rather, all of the provisions must be considered with reference to the whole instrument. Id. Moreover, when the meaning of a contract is questioned, the court must decide whether the contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the contract was entered. Id. at 394; Reilly, 727 S.W.2d at 529; see also Watkins v. Petro-Search, Inc., 689 F.2d 537, 538 (5th Cir. 1982).

Applying these principles of construction to the November 13, 1988 letter, we conclude its language does not unambiguously create a guaranty. Neither the word "guaranty," nor any derivative thereof, appears in the letter. Also, after consulting Webster and Black, we cannot agree that the correct, much less the common,

12

meaning of "ratify," "reaffirm," or "assure" is synonymous with guaranty. Indeed, a reading of the entire letter suggests no more than a promise on the part of Nordell, Veronex, Hite, and Laferty to comply with the ENIM Agreement. The letter's purpose was to quell Triton's fears concerning the validity of the ENIM Agreement and to end the 1988 litigation, as evidenced by the fact that it was drafted on the eve of the hearing on Triton's petition for injunctive relief and after Triton had stated it would accept the duress defense and walk away from the project. The "individual capacity" language was included because Triton sued Hite individually in the 1988 litigation, which the letter sought to settle. Thus, the language Triton underscores does not indicate a promise by Hite to become liable under the ENIM Agreement upon default by Nordell and Veronex, but a promise to refrain from acting in a manner that will impede Triton's operations under the contract. The district court, therefore, incorrectly construed the November 13, 1988 letter and improperly granted summary judgment against Hite.

## III.

Based on the foregoing discussion, we hold that the November 13, 1988 letter, on its face, unambiguously does not create a guaranty by Hite in favor of Triton. Accordingly, we REVERSE the district court's grant of summary judgment in favor of Triton and RENDER judgment in favor of Hite dismissing the cause.

13